**Gilbert A. CUNEO et al., Appellants**

v.

**James A. SCHLESINGER, Secretary of Defense, et al.**

**No. 72–1328.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 6, 1973.

Decided Sept. 5, 1973.

Robert L. Ackerly, Washington, D. C., with whom Herbert L. Fenster, Wash-

ington, D. C., was on the brief for appellants.

William Kanter, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U. S. Atty., and Walter H. Fleischer, Atty., Dept. of Justice, were on the brief, for appellees.

1. "(a) Each agency shall make available to the public information as follows:

"(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

"(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

"(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

"(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

"(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

"(E) each amendment, revision, or repeal of the foregoing. Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

"(2) Each agency in accordance with published rules, shall make available for public inspection and copying—

"(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

"(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

"(C) administrative staff manuals and instructions to staff that affect a member of the public;

Before BAZELON, Chief Judge, and ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellant sought to obtain disclosure under the Freedom of Information Act [1] unless the materials are promptly published and copies offered for sale. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction. However, in each case the justification for the deletion shall be explained fully in writing. Each agency also shall maintain and make available for public inspection and copying a current index providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if—

"(i) it has been indexed and either made available or published as provided by this paragraph; or

"(ii) the party has actual and timely notice of the terms thereof.

"(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member. Except as to causes the court considers of greater importance, proceedings before the district court, as authorized by this paragraph, take

of the Defense Contract Audit Manual, a manual prepared by the Defense Contract Audit Agency in the Department of Defense. On cross-motions for summary judgment, and after an *in camera* inspection, the District Court held that the portions of the Manual not available to the public were exempt from disclosure under exemptions two and five of the FOIA.[2] For lack of a detailed record essential to this type action, we are unable to determine if the information sought by appellant falls within one of the exemptions. We remand for further proceedings.

## I. *Facts*

The Defense Contract Audit Agency was established to provide necessary audit services to government officers in contract administration. DCAA acts in an advisory capacity to the contracting officer, and verifies that the costs incurred in performing a contract for the Armed Services comply with criteria of the Armed Services Procurement Regulations by conducting an examination of government contractors' books and records. In view of the large number of government contractors and the great volume of contracts in different stages of performance, the DCAA must necessarily be selective and must limit its scrutiny to a relatively small portion of the books and records which could be audited. The Defense Contract Audit Agency Manual, first issued in its *current* form in 1965,[3] was designed to guide DCAA auditors in effective auditing in a selective manner.

Appellant alleges that the Manual, or parts of it, have regularly been made available to members of the public, including on occasion appellant's clients. Appellees do not dispute this but, rather, allege that these disclosures were never authorized.[4] In addition, a relatively complete description of the contents of the Manual, including quotations from it, has been published in a treatise on

precedence on the docket over all other causes and shall be assigned for hearing and trial at the earliest practicable date and expedited in every way.

"(4) Each agency having more than one member shall maintain and make available for public inspection a record of the final votes of each member in every agency proceeding.

"(b) This section does not apply to matters that are—

"(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;

"(2) related solely to the internal personnel rules and practices of an agency;

"(3) specifically exempted from disclosure by statute;

"(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

"(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;

"(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

"(9) geological and geophysical information and data, including maps, concerning wells.

"(c) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress."

5 U.S.C. § 552 (1970).

2. Cuneo v. Laird, 338 F.Supp. 504 (D.D.C. 1972).

3. The Manual sought here was preceded by earlier editions that were readily available to the public. Portions of these earlier editions were separated into appendices to the current Manual; these appendices are available to the public.

4. Until 1967 the foreword to the Manual provided:

While the Manual is not available for public distribution, there is no prohibition against showing portions to contractors or others, when such action would be mutually beneficial.

Joint App. at 54.

defense contract auditing.[5] Finally, the Manual is made available to certain non-federal agencies and foreign governments who deal with American contractors.[6] Thus, to at least some extent, the Manual has been made available to individuals outside the DCAA.

The Government argued before the trial court that the information in controversy was exempt because it was "(2) related solely to the internal personnel rules and practices of an agency"; constituted "(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency"; and/or was composed of "(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."[7] The trial court, after examining the Manual *in camera,* on motions for summary judgment held that it was a "playbook," or "game plan," i.e., tactics to be employed, and that this playbook was exempt from disclosure under categories (2) and (5).

On appeal appellant abandoned his efforts to obtain those portions of the Manual that constitute a mere playbook.[8] He redoubled his argument, however, that portions of the Manual dealt with the allowability of costs. Such portions, according to appellant, constitute a form of substantive "secret law" that must be disclosed under the FOIA. Appellant also argued that the disclosure of portions of the Manual to various individuals, other non-federal agencies and foreign governments, constituted a waiver of exemption as to those portions.

## II. *The Nature of the Information Sought*

Before the trial court appellant was requesting the entire contents of the Manual. According to the Government, the non-public portions of the Manual provide "uniform guidance and instructions concerning the criteria to be used in deciding what must be audited, how it shall be audited, what is to be the depth of the examination, what the frequency of the audit shall be, and how to determine the extent of reliance which may be placed on the contractor's own inter-

5. P. Trueger, Accounting Guide for Defense Contracts (6th ed. 1971).

6. Joint App. at 54, 104, 106 & 107.

7. *See* note 1, *supra.*

8. There was considerable confusion regarding precisely what appellant wanted to have disclosed. After questioning by this court during oral argument it became obvious that appellant was not asking for the Manual to be disclosed in its entirety. The following dialogue indicates the parameters of appellant's request for disclosure:

THE COURT: Are there any instructions available to the field auditors which you would agree you do not have access to?

APPELLANT: Well, as we have suggested in our brief, if there are such things as saying the time of the audit, or it is not necessary to audit, say, fringe benefits, then of course, that might be excluded, but to the extent that any of the principles of ASPR—ASPR has the force and effect of law, in accordance with several decisions of the Supreme Court—to the extent that this Manual refines ASPR and its application, it becomes secret law, because it is ASPR that we are bound by.

\* \* \* \* \*

THE COURT: How would you distinguish between what Judge Hart referred to as the "game plan" and the law?

APPELLANT: Well, to the extent that the Manual refines ASPR—which we believe it must because ASPR is very general and every agency has an audit manual refining the cost principles set forth in their regulations—that is law and that becomes secret law. To the extent that the Manual might say "conduct the audit at a certain hour during the day or pick out this account and not that account," we don't need that and I don't think the public is entitled to it. But, to the extent that there are refinements of cost principles, I think that is clearly secret law. That is not giving away the game plan; that is a refinement of regulations that have the force and effect of law.

\* \* \* \* \*

THE COURT: If we find some things in there that don't fall within your definition of secret law, and are outside those areas that you contended relate to costs of contracts audited, then perhaps those things should remain secret?

APPELLANT: I agree, I agree.

nal controls."[9] In other words, the Manual is a mere "playbook" that tells auditors where to look in the mass of books and records confronting them, but does not provide substantive guidance or otherwise set standards for what costs will actually be allowed. If a contractor knows in advance the coverage, depth, and scope of an audit, the contractor may be able to claim improper costs in areas that will receive little or no scrutiny. Thus, the Government argues that, for an audit to be effective, the portion of the Manual on coverage, depth, and scope must be kept secret.

Appellant disputes as a matter of fact this characterization of the Manual's contents. As a matter of law appellant's primary theory originally was that the Manual was an "administrative staff manual . . . that affect[s] a member of the public."[10] The FOIA specifically requires that such "administrative staff manuals" be made available to the public.

In addition to his principal contention that the entire Manual be disclosed as being an "administrative staff manual," appellant advanced two subsidiary arguments that, if accepted, would require the disclosure of *portions* of the Manual. *First,* appellant contended that at least portions of the Manual set forth standards of interpretation of ASPR and guidelines for the allowability of costs; these portions were said to constitute a form of "secret law" that must be disclosed under the FOIA. *Secondly,* appellant claimed that portions of the Manual had been made available to various persons and entities outside the Federal Government, and that at least as to these disclosed portions, DCAA had waived any right it might have to keep them secret.

At oral argument appellant abandoned his request for the entire Manual and narrowed his efforts to seeking disclosure of the portions that constituted "secret law."[11] Due to this concession, we no longer have reason to consider whether the entire Manual must be disclosed under the requirement covering "administrative staff manuals."[12] By like token, we need not consider the argument that disclosure to certain individuals and entities constituted a waiver of any right to keep those portions secret. This is true because appellant has stated that he wants only those portions of the Manual which constitute "secret law." Since appellant has an undeniable right to obtain such law, it is irrelevant whether those portions may also be obtained under a theory of waiver. We therefore do not decide any waiver issue here.

There does not appear to be any disagreement between the parties regarding what the nature of the "secret law" being sought actually is. The portions sought by appellant, which the Government agrees should be made available if they actually exist, are those which either create or determine the extent of the substantive rights and liabilities of a person affected by those portions. Information that falls within this definition would include, for example, guidelines for what costs would be allowed under ASPR, and rules or interpretations dealing with other substantive laws. Appellant does not seek to obtain disclosure of those portions of the Manual that prescribe techniques to uncover the facts relevant to a particular contract. Nor is a right to disclosure claimed for procedures directing auditors to concentrate examination on certain elements of a contractor's records.

 It is clear that if any portion of the Manual does consist of interpretations of rules and statutes or guidelines for allowability of costs, appellant has a

---

9. Joint App. at 74.

10. 5 U.S.C. § 552(a)(2)(C) (1970).

11. *See* note 8, *supra.*

12. The scope of the "administrative staff manual" disclosure requirement has recently been considered by two other Circuits. *See* Stokes v. Brennan, 476 F.2d 699 (5th Cir., 1973); Hawkes v. IRS, 467 F.2d 787 (6th Cir. 1972).

right to obtain disclosure.[13] Indeed, this was conceded by government counsel during oral argument. The sole remaining issue is thus purely factual—whether the Manual does contain any "secret law".

In the unsatisfactory manner in which these FOIA cases have been arising, we have no record before us containing the answer to this issue. The District Judge was confronted with appellant's original claim for total access to the Manual, opposed by the Government's claim to blanket exemption under three exceptions to disclosure. On cross-motions for summary judgment, after *in camera* examination of the several volumes constituting the Manual, the District Judge sustained the Government's overall non-disclosure position under exemptions (2) and (5). Counsel apparently made no discriminating analysis of how portions of the Manual might differ in their purpose, nature, and content, and thus be subject to different criteria of disclosure; understandably, the trial judge made none.

### III. Procedures Under the FOIA

#### A. Problems of Testing Disclosability of Allegedly Secret Information

■ Recently in Vaughn v. Rosen[14] this court had occasion to discuss the

problems inherent in implementing the FOIA. Despite the heavy emphasis in favor of disclosure[15] and the specific requirement that the *Government* shall have the burden of proving that information need not be revealed,[16] we noted in *Vaughn* that procedures most often used in FOIA cases permit the Government very easily to avoid disclosure.[17] Since the party seeking disclosure does not know the contents of the information sought, he cannot argue as effectively that the documents sought are, for example, "secret law" to which he is entitled access. In contrast, the Government does have access to the information and with confidence can convincingly argue to the trial judge that the factual nature of the information is as the Government alleges.

As we noted in *Vaughn,* the burden of actually determining whether the information is as the Government describes it falls ultimately on the court system.[18] After the Government alleges that the documents in controversy do not contain material which must be disclosed, but on the other hand consist of information whose secrecy must be preserved, the very claim of secrecy, under the usual court procedures in vogue, means that the Government has substantially relieved itself of the burden of proving more. To preserve secrecy it is then

13. It is well established that information which either creates or provides a way of determining the extent of substantive rights and liabilities constitutes a form of law that cannot be withheld from the public. *See* Sterling Drug, Inc. v. FTC, 146 U.S.App.D. C. 237, 450 F.2d 698 (1971); American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 411 F.2d 696 (1968). The FOIA by its explicit terms condemns "secret law" and requires that it be made public:

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register . . .

5 U.S.C. § 552(a)(2)(A) & (B) (1970). *See generally* Davis, Administrative Law, § 3A.27 (1970 Supp.).

14. 157 U.S.App.D.C. ——, 484 F.2d 820 (1973). (1973).

15. "The legislative plan creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed." Getman v. NLRB, 146 U.S.App. D.C. 209, 211, 450 F.2d 670, 672, stay denied, 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971). *See also,* Bristol Myers v. FTC, 138 U.S.App.D.C. 22, 25, 424 F.2d 935, 938, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970); M.A.Schapiro & Co. v. SEC, 339 F.Supp. 467, 469 (D.D.C.1972).

16. 5 U.S.C. § 552(a)(3) (1970).

17. Vaughn v. Rosen, 484 F.2d at 823–827 (1973).

18. *Id.* at 824–826.

up to the trial judge to wade through the mass of documents and determine whether the information must be disclosed. The party seeking disclosure is helpless to contradict the Government's description of the information or effectively to assist the trial judge.

In *Vaughn* we concluded that the ease with which the Government could carry its burden, and the difficulty that a trial judge faces in determining whether information should be disclosed, created intolerable problems. *First*, it encouraged agencies to argue for the widest possible exemption from disclosure for the greatest bulk of material. *Secondly*, it had a tendency to undermine the reliability of a trial judge's findings; a trial judge, without the aid of counsel seeking disclosure, cannot be expected to investigate and isolate the factual nature of individual documents in a mass of similar appearing material. *Thirdly*, because the points of factual dispute have not been isolated by the traditional forms of argumentation and adversary testing, a determination is virtually unreviewable on appeal. The case at bar we remand for additional proceedings which hopefully will rectify to some extent these flaws.

### B. *Procedures Upon Remand*

1. As in Vaughn v. Rosen, we believe that the problems adverted to will be substantially ameliorated if the Government is required to provide particularized and specific justification for exempting information from disclosure. This justification must not consist of "conclusory and generalized allegations of exemptions, such as the trial court was treated to in this case, but will require a relatively detailed analysis in manageable segments." [19] It is particularly important that information which is in effect substantive law not be concealed beneath a mass of other material. Even when the law is closely intermingled with other data, we cannot conceive of a situation in which legal interpretations and guidelines could not be

segregated from other material and isolated in a form which could be disclosed.

2. Upon remand the Government should correlate its reasons for claiming that the various portions of the Manual should not be disclosed with the relevant portions of the Manual.

[A]n indexing system would subdivide the document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification. Opposing counsel should consult with a view toward eliminating from consideration those portions that are not controverted and narrowing the scope of the court's inquiry. After the issues are focused, the District Judge may examine and rule on each element of the itemized list.[20]

3. Finally, if the District Judge deems it appropriate, he may appoint a special master to examine the Manual, the Government's justification, and the indexing. This could, in some circumstances, relieve much of the burden of evaluating voluminous documents that currently falls on the trial judge.

### IV. *Conclusion*

The case is remanded so that the Government may undertake to index and justify the Manual in a manner consistent with Part III of this opinion, and for the District Judge to rule thereon.

So ordered.

BAZELON, Chief Judge, concurring:

I agree entirely with Judge Wilkey's exposition of the impediments that have confronted courts in enforcing compliance with the mandate of openness in the Freedom of Information Act. These impediments derive, of course, from exactly the problem against which the Act was directed—the enthusiasm for secrecy that seems all too often epidemic in our Government. Courts are responsible under the Act for testing broad claims of exemption from disclosure, claims that information must remain secret,

19. *Id.* at 826.

20. *Id.* at 827.

against the precise categories of necessary secrecy that Congress has defined. Yet the claim of exemption has, in the past, foreclosed adversary analysis of whether, in fact, exemption is warranted, presenting the grave danger that, despite the best efforts of the court, the claim alone might conclude the case. *See* Sterling Drug, Inc. v. FTC, 146 U. S.App.D.C. 237, 450 F.2d 698, 715–716 (1971) (Bazelon, C. J., concurring in part and dissenting in part).

I do not suppose, nor, I assume, does the Court, that the procedures we have mandated to govern the remands here and in Vaughn v. Rosen, —— U.S.App. D.C. ——, —— F.2d —— (1973) will completely dispose of the problem. They are, like much in the law, an experiment to be tried by experience. And experience may prove that additional steps or different approaches are called for. Nonetheless, I think that these procedures bear substantial promise of facilitating enforcement of the Act. I join in the opinion of the Court.