508 F.2d 125
 88 L.R.R.M. (BNA) 2902, 76 Lab.Cas. P 10,683
 SEAFARERS INTERNATIONAL UNION AFL-CIO, Plaintiff-Appellee,
v.
Louis V. BALDOVIN, Jr., Regional Director, Region 23,
National Labor Relations Board, Defendant-Appellant.
No. 74-3709.*
*It is appropriate to dispose of this case summarily. See
Groendyke Transport, Inc.
v.
Davis, 5 Cir., 1969, 406 F.2d 1158.
 United States Court of Appeals, Fifth Circuit.
 Feb. 17, 1975.
 
 Elliott Moore, Deputy Associate Gen. Counsel, Abigail J. Cooley, Bert Bisgyer, Attys., NLRB, Washington, D.C., Arthur Safos, Regional Atty., Region 23, NLRB, Houston, Tex., for defendant-appellant.
 W. Arthur Combs, Houston, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GEWIN, GODBOLD and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 Jurisdiction of this action was predicated on the Freedom of Information Act, 5 U.S.C. 552.[1] On the basis of pleadings and argument of counsel and without examination of the documents involved, the district court ordered the regional director of the National Labor Relations Board (NLRB) to file with the United States Court of Appeals for the District of Columbia his entire file in a proceeding seeking the issuance of a complaint charging an unfair labor practice. This was done to enable the Court of Appeals to determine if any portion of that file was needed to make a final determination in a cause pending before it which sought review of the General Counsel's refusal to file the requested complaint. Because the order appealed from here is based upon a record which appears to have been inadequately developed and is clearly insufficient to permit our review under the Freedom of Information Act, or in the alternative, is predicated upon an erroneous view of the district court's power under that Act to assist the United States Court of Appeals for the District of Columbia Circuit, we vacate and remand for further proceedings.
 
 
 2
 It all started when Seafarers International Union filed an unfair labor practice charge with the NLRB regional director based in the Houston, Texas area within the Southern District of Texas against a marine towing company because of the discharge of one of its members from employment as a crewman on a towing company vessel (23-CA-5008). When the director refused to issue a complaint on its charge, the Union appealed. The General Counsel of NLRB dismissed that appeal and the Union petitioned the United States Court of Appeals for the District of Columbia Circuit to review that action (Seafarers v. NLRB, No. 74-1604). This petition for review was based upon the claim that the Board failed to properly and fairly investigate the charge filed and thereby failed to follow its own rules related to the investigation and processing of such claims. The Union subsequently designated a number of documents to be included in the record before the Court of Appeals. These documents were: (1) the Charge; (2) Letter of Date April 5, 1974, signed by Louis V. Baldovin, Regional Director, 23rd Region, refusing to issue complaint; (3) Agenda Minute (Gutshall); (4) Final investigative report; (5) Appeal from the refusal of the Regional Office to issue complaint, including letter dated April 15, 1974, and formal appeal document, plus exhibits attached thereto; (6) Letter of date May 23, 1974, signed by Robert E. Auen, Director, Office of Appeals, denying appeal. The Board responded with a motion to dismiss the petition for want of subject matter jurisdiction and took the position that since there was no reviewable agency action before the Court of Appeals the filing of an agency record was unnecessary. The Union then decided to pursue a Freedom of Information Act proceeding in the place where the records it desired were located.[2] It therefore filed the instant action seeking to require the NLRB to produce the subject documentation for its use in connection with the relief sought in the Court of Appeals and thereafter filed an unopposed motion in the Court of Appeals to defer its ruling until the instant case under the Freedom of Information Act was concluded.
 
 
 3
 A number of the documents originally sought in the Court of Appeals and before the district court have now been furnished by NLRB, but the controversy centers over a claim advanced in the amended complaint in this Freedom of Information Act suit which seeks all affidavits, exhibits, memoranda, notes and records of (NLRB's) investigation and any and all other data taken or compiled in connection with its investigation of case No. 23-CA-5008 (the unfair labor practice charge growing out of the union member's dismissal) and any NLRB attachments to the Union's appeal.
 
 
 4
 The Board moved the district court to dismiss. The district court's order, from which the present appeal is taken, recites that the court is of the opinion that the motion to dismiss should be overruled and that the plaintiff-Union's request under the Freedom of Information Act should be granted. It, therefore, ordered the Regional Director of NLRB:
 
 
 5
 . . . to file with the United States Court of Appeals for the District of Columbia in Cause No. 74-1604, SIU v. N.L.R.B. now pending before said Court, its entire file in said Cause No. 23-CA-5008 in order that the Court of Appeals may determine what, if any portion of same is needed, in order for it to make a final determination in said cause.
 
 
 6
 NLRB appealed, and now has moved this court to summarily reverse the district court's turn-over order. It claims its refusal to disclose the documents demanded is covered by the following exceptions in the Freedom of Information Act:
 
 
 7
 (b) This section does not apply to matters that are-- (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency; (7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;[3] 5 U.S.C. 552. The Freedom of Information Act squarely places the burden on the agency to sustain its action in withholding such records as exempt, 5 U.S.C. 552(a)(3),[4] and therefore a disclosure order after the opportunity for proof had been accorded could be sustained. See Environmental Protection Agency v. Mink, 410 U.S. 73, 89-90, 93 S.Ct. 827, 837, 35 L.Ed.2d 119, 133-134 (1973); Stokes v. Brennan, 476 F.2d 699 (5th Cir. 1973). However, such a failure to meet the burden of proof does not appear to have been the basis for the court's action and we are unable to determine from the record before us the applicability of the exceptions claimed. The Board also argues here that the documents sought are not 'identifiable' as required by 5 U.S.C. 552(a)(3).[5] This appellate court is similarly in no position to ascertain the factual merit of this assertion.
 
 
 8
 The transcript of the colloquy between counsel and the district court at the time of argument indicates that the court may have predicated its action in part upon a spirit of assistance to the Court of Appeals in the District of Columbia. Its order, requiring that the documents sought to be produced before it for examination by the complaining party be instead produced before the Court of Appeals for its determination of what portions it might need, carries a similar implication. However, the jurisdiction of the district court is based entirely upon the Freedom of Information Act. The Supreme Court has recently made it clear that this jurisdiction confers a broad power to effectuate the Act through use of the inherent powers of the court as a court of equity, rather than being limited to an order to produce as expressed in the statute, Renegotiation Board v. Bannercraft Clothing Company, Inc., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). However, neither the Act nor any court construction of it intimates that such power was granted except to carry out the disclosure purposes intended. When the Union stopped its quest to enlist the aid of the Court of Appeals for the District of Columbia to obtain a proper appendix in a case pending before that court and instead sought to invoke the Freedom of Information Act to serve this end, it acted inappropriately. While the flexibility of remedy required by Bannercraft might literally permit such cross-court production, the Act was not intended to create a redundant power in this district court to require a government agency litigant in the appeals court of the District of Columbia to furnish that latter court with documents from which it can select those needed to exercise its judicial functions.
 
 
 9
 Accordingly, we vacate the order requiring the NLRB to lodge its entire file with the United States Court of Appeals for the District of Columbia and remand the instant cause to the district court with directions to allow the NLRB to develop an adequate record to permit determination of the proper classification of the information sought and resisted under the Freedom of Information Act, and to thereafter determine the rights of the parties. Because of the unique posture of this proceeding, any such determination on remand, if made after the effective date of the November 21, 1974 amendments to the Act, should be made in light of such amendments.
 
 
 10
 We do not know how voluminous the materials involved might be. We do, however, note that other courts have encountered procedural problems where an agency response to a broad demand has consisted of blanket claims of exemption, followed by the tender of a bulk of material for in camera inspection. See Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), and Cuneo v. Schlesinger, 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973); cf. Stokes v. Brennan, 476 F.2d 699 (5th Cir. 1973). Such a procedure imposes an unwarranted burden on the court. If it is deemed requisite, the district court may choose to require the parties to assist it in the resolution of the disputed issues by use of any appropriate pre-trial procedures which might sharpen or eliminate such issues, including partial disclosure with protective deletions and agreements as to protected or limited use, and by requiring an organization and explanation of all materials which are tendered for court inspection.[6]
 
 
 11
 Vacated and remanded with direction.
 
 
 
 [1]
 Since briefs have been submitted in this case, the Freedom of Information Act has been amended. On November 21, 1974 Congress overrode President Ford's veto of the law. It is scheduled to take effect on the ninetieth day after the date of enactment or February 19, 1975. 12 U.S. Code Cong. & Admin. News, p. 5758 et seq. (Dec. 15, 1974), amending, 5 U.S.C. Section 552
 
 
 [2]
 The new amendments now vest jurisdiction in the United States District Court for the District of Columbia in addition to the District Court in which the records are located:
 On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction . . .
 12 U.S. Code Cong. & Admin. News, p. 5759 (Dec. 15, 1974) (5 U.S.C. Section 552(a)(4)(b)), amending, 5 U.S.C. Section 552(a).
 
 
 [3]
 This exemption was amended to 'clarify Congressional intent disapproving certain court interpretations which have tended to expand the scope of agency authority to withhold certain 'investigatory files compiled for law enforcement purposes". Joint Explanatory Statement of the Committee of Conference, 12 U.S. Code Cong. & Admin. News, p. 6227 (Dec. 15, 1974). The amendment reads as follows:
 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (a) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (c) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of the record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (e) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;'
 12 U.S. Code Cong. & Admin. News, p. 5761 (Dec. 15, 1974). With regard to Exemption (7)(E), the conferees explicitly pointed out in their report that this exemption:
 Should not be interpreted to include routine techniques and procedures already well known to the public, such as ballistics tests, fingerprinting and other scientific tests or commonly known techniques. Nor is this exemption intended to include records falling within the scope of subsection 552(a)(2) of the Freedom of Information law, such as administrative staff manuals and instructions to staff that affect a member of the public.
 12 U.S. Code Cong. & Admin. News, p. 6227 (Dec. 15, 1974).
 
 
 [4]
 In the new amendments as well, 'the burden is on the agency to sustain its action,' 12 U.S. Code Cong. & Admin. News, p. 5759 (Dec. 15, 1974) (5 U.S.C. Section 552(a)(4)(b)), amending, 5 U.S.C. Section 552(a)
 
 
 [5]
 The requirement in the original Freedom of Information Act for 'identifiable' documents, 5 U.S.C. Section 552(a)(3), has been amended to require instead only those documents which a request for records 'reasonably describes'. 12 U.S. Code Cong. & Admin. News, p. 5758 (Dec. 15, 1974) (5 U.S.C. Section 552(a)(3)(a)), amending, 5 U.S.C. Section 552(a)(3). According to the House Report, which was adopted by the conference, this amendment was:
 designed to insure that a requirement for a specific title or file number cannot be the only requirement of an agency for the identification of documents. A 'description' of a required document would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.
 12 U.S. Code Cong. & Admin. News, pp. 6207 and 6222 (Dec. 15, 1974).
 
 
 [6]
 In reaction to Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the new amendments specifically provide that one of the tools a court 'may' use, to decide the applicability vel non of the exemptions provided in Section 552(b) is in camera inspection. 12 U.S. Code Cong. & Admin. News, p. 5759 (Dec. 15, 1974) (5 U.S.C. Section 552(a)(4)(b)), amending, 5 U.S.C. Section 552(a). At the same time, however, the amendments reaffirm Mink by requiring that 'any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection'. 12 U.S. Code Cong. & Admin. News, p. 5671 (Dec. 15, 1974) (5 U.S.C. Section 552(b)), amending, 5 U.S.C. Section 552(b)