**COASTAL STATES GAS CORPORA-TION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY, Defendant.**

**Civ. A. No. 79–197.**

United States District Court, D. Delaware.

June 30, 1980.

William O. LaMotte, III, and Lawrence A. Hamermesh, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff; J. Todd Shields, Rene P. Lavenant, Jr., and Charles S. Patterson, Jr., Fulbright & Jaworski, Houston, Tex., of counsel.

James W. Garvin, Jr., U. S. Atty., and John X. Denney, Jr., Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., Alice Daniel, Asst. Atty. Gen., Vincent M. Garvey and Stephen E. Hart, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this action based upon the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552, plaintiff Coastal States Gas

Corporation ("plaintiff" or "Coastal")[1] has moved for partial judgment or, in the alternative, to compel preparation by the defendant Department of Energy ("DOE") of an adequate *Vaughn*[2] index. For the reasons set forth below, plaintiff's motion for partial judgment will be granted.

In October, 1978, Coastal submitted a FOIA request to DOE. (Doc. No. 1, Ex. A). After receiving no response to this request from DOE other than two letters granting itself extensions of time, (Doc. No. 1, Ex. B; Doc. No. 73 at B58), Coastal initiated this suit pursuant to 5 U.S.C. § 552(a)(4)(B) in April of 1979. Coastal filed simultaneously with its complaint a motion to compel preparation of an index of all documents asserted by DOE to be exempt from disclosure under FOIA. In filing this motion, Coastal sought to effectuate the procedures established by the U. S. Court of Appeals for the District of Columbia in the landmark case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) ("*Vaughn*"). Following a conference with the Court, the parties, on May 9, 1979, entered into a Stipulation and Order containing, *inter alia*, the following provision:

4. Defendant shall, on or before June 22, 1979, file and personally serve upon Plaintiff's counsel an itemized, indexed inventory of every document responsive to Plaintiff's FOIA request which the Defendant asserts to be exempt from disclosure, accompanied by a detailed justification statement covering each refusal to release documents, divided into manageable segments and cross-referenced to the itemized, indexed inventory, which inventory shall specify for each document:

(a) The author(s), to the extent indicated in the document;

(b) The date the document was prepared, to the extent indicated in the document;

(c) The addressee(s), to the extent indicated in the document;

(d) The additional person or persons to whom the document was circulated and/or made available, to the extent indicated in the document;

(e) The subject matter;

(f) The regulation(s) expressly addressed or referred to either by number or by description (for example, "first sale exemption"), to the extent indicated in the document;

(g) The specific exemption(s) claimed to justify withholding each document, correlated specifically to the document or the segregable portion thereof claimed to be exempted from mandatory disclosure (with an explanation as to why exempt material could not be segregated from each document);

(h) A detailed justification of the basis for each claim of exemption;

(i) The specific injury to DOE which release of the document allegedly would create; and

(j) Why the public interest does not favor disclosure of the document.

(Doc. No. 6).

On July 2, 1979, DOE filed its index of documents claimed to be exempt from FOIA disclosure. (Doc. No. 16A). Accompanying this index was the affidavit of Laura Rockwood, an Attorney-Advisor to the Office of Legal Counsel, Office of the General Counsel, DOE, and a large number of documents claimed to be exempt in part, indicating those portions withheld from disclosure. Subsequent to the filing of this index, plaintiff sought discovery from DOE as to the method of its preparation of the index. The DOE filed a motion for a protective order with respect to this discovery. (Doc. No. 23). In its memorandum of

---

1. Plaintiff is the same entity as The Coastal Corporation, the plaintiff in Civil Action No. 80–8, in which an Opinion is being issued this date. Coastal States Gas Corporation changed its name to The Coastal Corporation subsequent to the institution of this action, but did not amend the caption of this action to reflect

that change. An Opinion is also being issued this date in this action concerning plaintiff's motion for more adequate search.

2. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

points and authorities in support of this motion, the DOE stated:

> Defendant has almost completed the preparation of a lengthy affidavit setting forth the facts concerning the initial handling of plaintiff's request; the scope of the extensive search that was undertaken to identify all responsive documents in May and June, 1979; defendant's efforts to segregate for release all information even if properly exempt, which would not be harmful to the government or private firms, if it were made public; *and further factual description and justification by categories of the information which the government has withheld.* That affidavit will be filed by the defendant no later than Friday, August 3, 1979. (Doc. No. 25 at 15) (emphasis added).

At the oral argument on defendant's motion on August 2, 1979, counsel for the DOE stated:

> The Government, as the cases have indicated, is entitled to attempt to provide by means of affidavit information about the document that's being withheld. The Government has prepared and will be filing tomorrow in the Court here an additional affidavit which will be providing additional information about the documents that are being withheld in this lawsuit. And it is the Government's contention that when this affidavit is examined in conjunction with the papers that have already been filed in this case—the other indexes—that there will be more than sufficient information on the public record before the Court and available to Plaintiff's counsel in order for an adversarial dispute about the invocation of the exemptions to take place.

(Doc. No. 34 at 9–10). *See also* Doc. No. 34 at 12–13, 15.

No such affidavit further substantiating the DOE's assertions of exemption was ever filed. Similarly, the DOE's promised summary judgment motion (Doc. No. 25 at 15; Doc. No. 34 at 10) was never filed. After the defendant's motion for a protective order was denied, discovery ensued and on December 7, 1979, plaintiff filed the instant motion. Oral argument on this motion took place on February 28, 1980. On February 27, 1980, at 3:00 p. m., the DOE filed the affidavit of Christopher M. Was, an attorney in the Office of General Counsel, DOE, (Doc. No. 71) and a "Revised DOE Index of Exempt Documents Other than Documents Exempt Solely Under 5 U.S.C. § 552(b)(4)." (Doc. No. 71A). The revised index had been promised by DOE in its answering brief on plaintiff's motion for partial judgment. (Doc. No. 51 at 4–5). The DOE contends that its filing of the revised index dictates against granting plaintiff's motion for partial judgment. The Court does not agree and will grant plaintiff's motion to strike this index. (Doc. No. 72).

## I. *DOE'S COMPLIANCE WITH THE MAY 9, 1979 ORDER*

DOE apparently does not vigorously contest the plaintiff's view that the July 2 index failed to comply with the May 9 Order, for its statement of the issues presented by this motion, contained in its answering brief, addresses only the propriety of partial judgment as a remedy in this case and whether the DOE should be ordered to prepare a revised index, in light of its promise to do so. Similarly, at oral argument, counsel for DOE, while not conceding that the July index was "woefully inadequate," did not vigorously challenge plaintiff's contention that the index failed to comply with the Court's Order. *See, e. g.,* Doc. No. 73, at B–37, B–40, B–41, B–44, B–51, B–55. (Transcript of hearing on plaintiff's motion for partial judgment). Indeed, implicit in the DOE's filing of a revised index is its belief, expressed several times by counsel, that the July index had many "deficiencies."

 An analysis of the July 2 index demonstrates conclusively that the index does not comply with this Court's Order. This index would be of absolutely no help to the Court in determining whether the numerous documents claimed by DOE to be exempt from disclosure are in fact exempt. Moreover, Coastal is unable to adequately argue to the Court from this index that specific documents are not exempt. Thus,

the situation present in this case is not unlike that which prompted the District of Columbia Circuit in *Vaughn v. Rosen, supra,* to establish the indexing requirement in FOIA cases. The party seeking to effectuate the Act's policy of disclosure "is at a loss to argue with desirable legal precision for the revelation of the concealed information," 484 F.2d at 823, in the absence of a factual showing by the government that the exemptions have been properly claimed for specific documents.

As alluded to *supra,* the DOE does not seriously argue it has complied with the Court's Order, but instead points to the Revised Index filed one day prior to the hearing as "[t]he most compelling reason that such action [partial judgment] is inappropriate." (Tr. B–32). This contention will be addressed next.

## II. *PARTIAL JUDGMENT*[3] *AS AN APPROPRIATE REMEDY*

The requirement that the government file a detailed index in support òf its claims of exemptions under FOIA was established by the courts in response to the difficulties encountered by FOIA plaintiffs in overcoming such assertions. *See Vaughn v. Rosen,* 484 F.2d 820, 823–24 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). This requirement, announced in *Vaughn* and refined in many subsequent cases, has been repeatedly described as "critical to effective enforcement of FOIA." *Founding Church of Scientology of Washington, D. C., Inc. v. Bell,* 603 F.2d 945, 947 (D.C.Cir. 1979). Similarly, the 1974 FOIA Amendments were enacted by Congress in response to the many difficulties and delays in obtaining documents experienced by FOIA requesters and litigants. *See generally* S.Rep. No. 93–854, 93d Cong., 2d Sess. (1974), *reprinted in* Staffs of Senate Committee on the Judiciary and House Committee on Government Operations, Freedom of Information Act and Amendments of 1974 (P.L. No. 93–502): Source Book: Legislative History, Texts, and other Documents (Com. Print 1975) ("Source Book"). These amendments sought to sharply curtail the amount of bureaucratic delay in producing requested information. It is against this judicial and legislative background that plaintiff's motion for partial judgment must be examined.

The FOIA, as amended in 1974, reflects on its face Congress' overwhelming intent to avoid undue delay in the production of information by the government. For example, all agencies must respond to FOIA requests within ten days after receipt of the request and must respond to appeals of adverse determinations within twenty days. 5 U.S.C. § 552(a)(6)(A)(i)–(ii). In specified "unusual circumstances," the agency may extend these deadlines by no more than ten additional days. 5 U.S.C. § 552(a)(6)(B). With regard to court actions brought to compel production of documents, Congress has instructed the District Courts to accord these suits "precedence" and "expedited" treatment, 5 U.S.C. § 552(a)(4)(D), and the defendant agency has been given only thirty days to answer or otherwise plead to the complaint. 5 U.S.C. § 552(a)(4)(C). The latter provision represents a halving of the normal time available to a federal agency for response to a complaint. *See, e. g.,* Source Book, *supra,* at 126; Fed.R.Civ.P. 12(a).

Congressional concern with agency delay in satisfying FOIA requests is underscored by reference to the legislative history of the 1974 FOIA Amendments. This history is replete with criticism of the excessive delay by federal agencies in responding to requests for public records under the FOIA. *See, e. g.,* Source Book, *supra,* at 17, 27, 29, 45, 46, 81, 99, 122, 126, 155, 172, 175, 178, 226, 227, 296, 420. The DOE's initial failure to respond at all to Coastal's request for information (Doc. No. 73 at 81, B–58) and its dilatory attitude toward this litigation, as expressed in its repeated offers and unfulfilled promises to revise its index of withheld documents, are exactly what Con-

---

**3.** Plaintiff's motion is styled as one for partial judgment because plaintiff does not seek, at this time, production of documents withheld under 5 U.S.C. § 552(b)(4), the FOIA trade secret exemption.

gress intended to eliminate with the 1974 Amendments. Permitting the DOE to rely upon its latest eleventh-hour effort to delay these proceedings would make a mockery of the legislation.

The *Vaughn* index requirement is designed to aid both the Court and the seeker of public information in determining whether the government has properly withheld documents claimed to be exempt from disclosure. *See generally Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Cuneo v. Schlesinger,* 484 F.2d 1086 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). It has been recognized to be an extremely important tool in the enforcement of the FOIA; indeed, as noted above, the *Vaughn* index has been repeatedly characterized as "critical to the effective enforcement of the FOIA." *Founding Church of Scientology, supra,* 603 F.2d at 947.[4] Moreover, the *Vaughn* procedures have been specifically approved by Congress. *See* Source Book, *supra,* at 167.

The DOE's actions in the instant case indicate that the importance of the *Vaughn* requirements is not being recognized. Despite this often-stated judicial sentiment, agencies such as the DOE apparently believe they need not immediately comply with the well-established procedure for asserting exemptions, but may instead revise and correct their indices until they "get it right." Perhaps this belief is due in part to the actions of the courts in permitting federal agencies to correct the failings of the indices previously submitted. *See, e. g., Founding Church of Scientology, supra; Tarnopol v. Federal Bureau of Investigation,* 442 F.Supp. 5 (D.D.C.1977); *Mobil Oil Corp. v. F.T.C.,* 430 F.Supp. 849 (S.D.N.Y. 1977); *Mobil Oil Corp. v. F.T.C.,* 406 F.Supp. 305 (S.D.N.Y.1976). *See also* cases cited in note 6 *infra.* Indeed, the DOE relies primarily upon these cases in support of its contention that it should be permitted to revise its deficient index. However, in light of the DOE's long-standing knowledge of the *Vaughn* index requirement and its importance and the clear congressional policy in favor of expeditious handling of FOIA cases, this Court has no intention of having this case added to the DOE's string citation of cases permitting second, third and even fourth "bites at the apple" in FOIA litigation. The District of Columbia Circuit has apparently also reached the same conclusion after several years of extensive experience[5] in FOIA litigation. In *Coastal States Gas Corporation v. Department of Energy,* 617 F.2d 854 (D.C.Cir. 1980), the court upheld the district court's order requiring the DOE to produce all documents for which its claims of exemption were not adequately supported in the *Vaughn* index. The court wrote:

> DOE submitted an index of the withheld documents, along with affidavits from regional counsel in support of its decision

4. The detailed index serves several purposes. In *Vaughn,* the court wrote:

> The procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure. Yet the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate. Our decision here may sharply stimulate what must be, in the final analysis, the simplest and most effective solution—for agencies voluntarily to disclose as much information as possible and to create internal procedures that will assure that disclosable information can be easily separated from that which is exempt. A sincere policy of maximum disclosure would truncate many of the disputes that are considered by this court. And if the remaining burden is mostly thrust on the

Government, administrative ingenuity will be devoted to lightening the load.

484 F.2d at 828.

*Cuneo, supra,* expressed the hope that the *Vaughn* requirements would ameliorate several "intolerable problems" theretofore present in FOIA litigation: the encouragement to agencies to "argue for the widest possible exemption from disclosure for the greatest bulk of material," the undermining of the reliability of the trial judge's findings due to the absence of adversary proceedings, and the impossible nature of appellate review absent the isolation of factual disputes "by the traditional forms of argumentation and adversary testing." 484 F.2d at 1092.

5. *See Weissman v. Central Intelligence Agency,* 565 F.2d 692, 697 n.11 (D.C.Cir. 1977).

not to release the memoranda. The parties have referred to these materials as the Government's "*Vaughn* Index," but we wish to make clear that this index is not what we had in mind in our decision in *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820, *cert. denied*, 415 U.S. 977 [94 S.Ct. 1564, 39 L.Ed.2d 873] (1974) (*Vaughn I*), in which we set out suggested procedures to allow the courts to determine the validity of the Government's claims without physically examining each document. We repeat, once again, that conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases. . . Such an index is patently inadequate to permit a court to decide whether the exemption was properly claimed. . . .
At several points in the course of this opinion we will rely on a conclusion *not* that the documents are not exempt as a matter of law, but that the agency has failed to supply us with even the minimal information necessary to make a determination. We remind the agencies, once again, that the burden is on them to establish their right to withhold information from the public and they must supply the courts with sufficient information to allow us to make a reasoned determination that they were correct.

617 F.2d at 861.

The DOE seeks to distinguish this opinion by noting correctly that it had moved for summary judgment in that case on the basis of the proffered index and that the Court of Appeals opinion followed a ruling on the merits by the trial court. However, these are not crucial distinctions. The main thrust of FOIA litigation is to determine whether the agency has properly withheld information from the public. The index contains the agency's justification for exemption from disclosure and the agency should be prepared to rest upon it whether or not it formally moves for summary judgment. In the instant case, the DOE indicated on the record its intention to file a motion for summary judgment by no later than August 17, 1979. (Doc. No. 25 at 15; Doc. No. 34 at 10). It cannot now argue that its failure to do so prevents the court from adopting the rationale of the District of Columbia Circuit's opinion requiring production of documents for which the DOE has not adequately supported its claims of exemption. Similarly, in light of past District of Columbia Circuit rulings remanding FOIA litigation to the trial court with instructions to the agency to provide more information,[6] its decision not to do so in *Coastal* is entitled to consideration by this Court.

In holding that documents will be ordered produced without consideration of the DOE's latest index, the Court rests solely upon the provisions and policies of the FOIA and the well-established purpose for requiring the filing of an adequate *Vaughn* index. Plaintiff has urged the Court to treat the DOE's failure to comply with the May 9 Order as meriting the sanction of partial judgment as a matter of discovery law. While it is true that the DOE has had several opportunities to submit revised and complete information to the Court, such failures would not merit the relief sought by plaintiff absent the clear policies to be effectuated in FOIA litigation.[7] Similarly,

---

6. *See, e. g., Founding Church of Scientology of Washington, D. C. v. Bell*, 603 F.2d 945 (D.C. Cir. 1979); *Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978); *Mead Data Central, Inc. v. U. S. Department of Air Force*, 566 F.2d 242 (D.C. Cir. 1977); *Pacific Architects & Engineers Inc. v. The Renegotiation Board*, 505 F.2d 383 (D.C. Cir. 1974). *See also Kelly v. Railroad Retirement Board*, 625 F.2d 486 (3d Cir. 1980). In that case, the Third Circuit found that the Board had failed to comply with its own regulations by obtaining additional evidence without giving the claimant an opportunity to rebut it.

The court, in refusing to remand the case to the agency for its reconsideration, stated:

> To permit the agency to do it over again, this time correctly, gives the agency no incentive to comply at the start and penalizes the applicant by requiring her to return to the agency forum because of the agency's errors. 492 F.2d at 625. This reasoning is equally applicable in the instant case.

7. Counsel for DOE contends that FOIA litigation is to be treated by the courts in the same manner as other litigation involving the federal government. This argument, however, ignores

with respect to its recently filed revised index, the DOE has analogized to cases in which a party seeks to introduce evidence not referenced in the pre-trial order. In these circumstances, the exclusion of such evidence is governed by the following four criteria:

1. the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;

2. the ability of that party to cure the prejudice;

3. the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court;

4. bad faith or willfulness in failing to comply with the court's order.

*DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201–02 (3d Cir. 1978). Once again, these cases are inapposite to the instant case, given the overriding importance of the policies of the FOIA.

One factor entering into the Court's holding, however, is the "trial court's inherent power to control the proceedings before it." *Jones v. Menard*, 559 F.2d 1282, 1285 n.5 (5th Cir. 1977), *cited with approval in De-Long Corp. v. Raymond International, Inc.*, 622 F.2d 1135, at 1140 n.5 (3d Cir. 1980). In *Jones*, the court upheld the trial court's refusal to accept an affidavit submitted at oral argument on a motion for summary judgment, noting the court's "inherent power" to do so. The DOE apparently believes it can set its own schedule for compliance with Court orders in this District. Specifically, in this case, on the eve of oral argument on this motion, it filed a revised index which it contended rendered plaintiff's motion moot. (Doc. No. 51 at 14). This indifference to orders and decisions of this Court is not new. *See Coastal Corporation v. Duncan*, 86 F.R.D. 514, (D.Del. May 5, 1980), and examples cited therein at 15–16. It must be made clear to the DOE that it must comply with Court orders, within the time limits set by the Court for doing so, or face the consequences. While important in all

cases, FOIA's clear policy of prompt disclosure of information supplies an additional reason for judicial insistence upon control of its docket through required adherence to its orders.

The Freedom of Information Act permits the district court to examine *in camera* the contents of agency documents withheld from the FOIA plaintiff to determine whether such documents have been properly withheld. 5 U.S.C. § 552(a)(3)(B). Use of this procedure is limited to the exercise of the trial court's discretion. In enacting this provision, Congress rejected a proposal *to require in camera* inspection in FOIA cases, Source Book, *supra*, at 166, and stated:

> While the court should be able to require submission of documents for in camera inspection when it determines such procedure to be desirable and appropriate, the court should also . . . 'be enabled to reach a decision with respect to whether or not a particular record has been lawfully withheld under the Freedom of Information Act in any manner that it chooses, including through the use of affidavits or oral testimony.'

Source Book, *supra*, at 166.

Both Congress and the courts have recognized the disadvantages placed upon the FOIA plaintiff when *in camera* examination is utilized. *See* Source Book, *supra*, at 166; *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 697 (D.C.Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Military Audit Project v. Bush*, 418 F.Supp. 876, 878–79 (D.D.C.1976). Such an examination is conducted without benefit of an adversary proceeding and the plaintiff is usually at a loss to argue knowledgably against the government's claims of exemption. This "denial of confrontation creates suspicions of unfairness and is inconsistent with our traditions." *Weissman, supra*, 565 F.2d at 697; *accord Vaughn v. Rosen, supra*, 484 F.2d at 824. These disadvantages to FOIA plaintiffs become even more pronounced

the plain language of the Act, especially the substantially shorter response time provided

the government and the requirement for expeditious handling of FOIA suits.

where, as here, the government has supplied the Court and the plaintiff with a document index that fails to provide the minimum information essential to an intelligent disposition of the government's claims. *In camera* inspection under these circumstances would not only be unfair to the plaintiff but also extremely burdensome and unproductive to the Court. "[A] trial judge, without the aid of counsel seeking disclosure, cannot be expected to investigate and isolate the factual nature of individual documents in a mass of similar appearing material."[8] *Cuneo v. Schlesinger*, 484 F.2d 1086, 1092 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir. 1978), Chief Judge Wright stated:

> A detailed index and affidavits are necessary even if the court conducts an *in camera* examination, since these public explanations of the agency's action give the plaintiff at least some material on which to base its adversary role. Furthermore, these documents provide essential assistance to the court by focusing on the relevant issues and arguments. *See Mead Data Central, Inc. v. Department of the Air Force*, . . . 566 F.2d at 250–251, 260–262; *Vaughn v. Rosen*, 157 U.S.App.D.C. at 345–48, 484 F.2d at 825–828.

587 F.2d 1187, 1214 n.56 (D.C.Cir. 1978) (Wright, C. J., concurring). *See also Military Audit Project v. Bush*, 418 F.Supp. 876 (D.D.C.1976). Moreover, resort to *in camera* examination imposes a large burden on the district court. *See United States v.*

*Noall*, 587 F.2d 123, 127 (2d Cir. 1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). While the federal courts in the District of Columbia are called upon to handle a much larger percentage of FOIA litigation and are therefore perhaps more overburdened by *in camera* review in such cases than most courts, *see Weissman v. Central Intelligence Agency*, 565 F.2d 692, 697 n.11 (D.C.Cir. 1977), this Court has recently encountered a disturbing increase in requests for *in camera* review in non-FOIA litigation which similarly threatens to strangle the administration of justice in this District.[9]

Perhaps the most compelling reason, however, for not resorting to *in camera* review where the government has failed to proffer adequate information in support of its claims of exemption is the statutory placing of the burden of proof in FOIA litigation upon the government agency withholding documents. "[T]he burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). This burden may not be shifted by the government to the courts by resort to the *in camera* review mechanism. *In camera* review by the Court in the instant case would only encourage the DOE and other government agencies to provide vague, conclusory and incomplete document indices in an effort to force the Court, rather than the agency, to sift through thousands of pages of documents and determine whether the FOIA exemptions apply. *See Mead Data Central, Inc. v. U. S. Department of the Air Force*, 566 F.2d 242, 260 (D.C.Cir. 1977); *Vaughn v. Rosen, supra*, 484 F.2d at 825–26.

**8.** *In camera* review also makes meaningful appellate review of the district court's rulings more difficult. Without an adequate factual record, a reviewing court cannot determine whether the district court properly ordered documents released or withheld, short of reviewing the disputed documents itself. The District of Columbia Circuit has noted this difficulty on several occasions. *See, e. g., Vaughn v. Rosen, supra*, 484 F.2d at 825; *Pacific Architects & Engineers Inc. v. The Renegotiation Board*, 505 F.2d 383, 385 (D.C.Cir. 1974); *Mead Data Central, Inc. v. U. S. Department of the Air Force*, 566 F.2d 242, 250 n.10 (D.C.Cir. 1977).

**9.** By way of limited example, in *Phoenix Canada Oil Co. Ltd. v. Texaco Inc.*, 78 F.R.D. 445, the parties suggested that the Court review *in camera* over 1500 documents. After being informed by the Court this suggestion was unacceptable, the parties, through protracted negotiation and conferences, reduced the documents in dispute to 35. In *General Battery Corporation v. Gould Inc.*, C.A. No. 76–162, the parties recently exhibited no reluctance in offering to submit over 550 allegedly privileged documents to the Court for its review. This trend may be due, in part, to litigants making the judgment that the Court of Appeals for the Third Circuit will continue to encourage such a procedure, *see, e. g., United States v. O'Neill*, 619 F.2d 222 at 230 (3d Cir. 1980).

In light of the clear congressional policy favoring prompt disclosure of government records, the importance of the indexing requirements in resolving FOIA disputes, and the serious disadvantages associated with *in camera* review, I conclude the government has not met its statutory burden of sustaining its action and, accordingly, will order the production of all documents sought by plaintiff in its motion for partial judgment.