McNeill **STOKES** and Lewis C. **Barbe,**
**Plaintiff-Appellee,**

v.

Peter J. **BRENNAN, Secretary of Labor,
U.S. Department of Labor,
Defendant-Appellant.**

No. 72–2946.

United States Court of Appeals,
Fifth Circuit.

April 3, 1973.

John W. Stokes, Jr., U. S. Atty., Charney K. Berger, Asst. U. S. Atty., Beverley R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., for defendant-appellant.

J. Ben Shapiro, Jr., Atlanta, Ga., for plaintiff-appellee.

Before ALDRICH *, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Stokes and Barbe brought this action based on the Freedom of Information Act [the Act] [1] in the District Court for the Northern District of Georgia, seeking temporary and permanent injunctions prohibiting the Secretary of Labor from withholding certain documents and materials. The materials sought include the " 'Training Course for Compliance Safety and Health Officers' including all instructor and student manuals, training slides, training films and other visual aids and materials used in training inspectors of the Occupational Safety and Health Administration." Stokes and Barbe contend that the material sought is an administrative staff manual and contains a substantive discussion of the provisions of the Occupational Safety and Health Act of 1970, 84 Stat. 1590. After examining the manual *in camera*, the District Court ordered the Secretary to produce the manual and teaching aids for inspection and copying. This appeal ensued. We affirm.

Though the government's position in this and other cases involving similar issues might lead one to a contrary conclusion, disclosure of material in government files has now become the rule, not the exception. The Act was in-

---

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

1. 5 U.S.C.A. § 552 (1967).

tended to increase public access to such records through the imposition of liberal disclosure requirements limited only by specific, narrowly constructed exemptions. The Act is divided into three subsections: the first sets out the types of material which must be disclosed, the second carves out certain restrictions and limitations on the nature of those materials which are required to be revealed, and the third emphatically reiterates the proposition that the Act does not authorize withholding of any information except as specifically stated. Thus, to prevail, the government had to show that the material which Stokes and Barbe sought was not within the purview of the first subsection of the Act, or if it was, that such material was exempted by one of the exclusions set out in the second subsection.

### The Administrative—Law Enforcement Dichotomy

■ Though all parties assumed in the court below that the material sought was an administrative staff manual which affected the public and thus was subject to disclosure [2] unless it was specifically exempted by one of the enumerated exclusions, the government now seeks to contend on this appeal that the material sought is without the purview of that provision. It does not challenge the fact that the material sought is a staff manual and that the material affects a member of the public. It argues, however, that the manual sought is not *administrative* in nature but rather is a *law enforcement manual*. It points to the language of the Senate Committee on the Judiciary as support for its proposition:

The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which pertain to administrative matters rather than to law enforcement matters protects the traditional confidential nature of in-

structions to government personnel prosecuting violations of law in court, while permitting a public examination of the basis for administrative actions.

Sen.Rep.No.813, 89th Cong., 1st Sess. 2 (1965). While the distinction which the government would draw is valid in the abstract, there is no basis in fact for applying it to this case.

The Sixth Circuit, after an examination of the legislative history of the Act, concluded that the purpose of the law enforcement exception "was to bar disclosure of the information which, if known to the public, would *significantly impede* the enforcement process." Because their reasoning is so apt the following quote is included for the convenience of the reader and in preference to any attempt at paraphrase:

Law enforcement is the process by which a society secures compliance with its duly adopted rules. Enforcement is adversely affected *only* when information is made available which allows persons simultaneously to violate the law and to avoid detection. Information which merely enables an individual to conform his actions to an agency's understanding of the law applied by that agency does not impede law enforcement and is not excluded from compulsory disclosure under (a)(2)(C).

Far from impeding the goals of law enforcement, in fact, the disclosure of information clarifying an agency's substantive or procedural law serves the very goals of enforcement by encouraging knowledgeable and voluntary compliance with the law. Such clarifying information is found in agency rulings made public; it is also found in many cases in manuals and instructions like those sought here which are addressed specifically to agency personnel. It may be found in the criteria for investigative action; in standards for evaluation and so

---

2. 5 U.S.C.A. § 552(a)(2) provides:
(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(C) administrative staff manuals and instructions to staff that affect a member of the public; . . .

forth. Materials providing such information are administrative in character and clearly discloseable under (a)(2)(C).

Hawkes v. Internal Revenue Service, 467 F.2d 787, 795 (6th Cir. 1972) (footnote omitted).[3]

Secrecy can be justified in such a case as the one at bar only to the extent that it protects policies governing enforcement methods which, if disclosed, would tend to defeat the purpose of inducing maximum voluntary compliance by revealing classes or types of violations which must be left undetected or unremedied because of limited resources.

Our comprehensive *in camera* examination of the documents in question fully affirms the district court's conclusion that there is no support in fact for the government's contention that disclosure of this entire manual and associated documents would allow an employer to anticipate the matters which compliance officers would or would not cover in their investigations. The general areas of instruction detailed in the manual have already been made public by disclosure of the course outline. An examination of the course material dealing with each of these broad areas reveals that, while certain of the obviously more important guidelines are emphasized, the course focuses on educating new officers as to the scheme of the standards as a whole. No matter how thorough an examination and analysis an employer may make of the manual and course material, he could not use the knowledge gained to insulate himself from the statutory penalties by complying with selected rules while ignoring even the least substantial part of the thrust of the standards as a whole. Rather, disclosure of these more concise explanations of inspection procedures and detailed discussions of the standards to be enforced is likely to lead to more compliance, not less. The material sought in this case is simply not within the ambit of the exception for law enforcement materials.

Since we hold that the manual sought is administrative in nature, we must proceed to examine the government's alternative argument that the material is excluded from the scope of the Act by two specific provisions. The government contends, first, that the manual is related solely to the "internal personnel rules and practices of an agency", and second, that the material is "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency".[4]

### The Internal Personnel Rules and Practices Exclusion

An examination of the legislative history of the internal personnel rules and practices exception reveals a definite conflict between the language of the Senate Report and that of the House Report. The Senate Committee stated:

> Exemption No. (2) relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like.

Sen.Rep., *supra*, at 8. The House, on the other hand, explains:

> Matters related solely to the internal personnel rules and practices of any agency: Operating rules, guidelines, and manuals of procedure for Gov-

---

3. In adopting the rationale of *Hawkes*, we embrace the principle stated by Professor Kenneth Davis—"secret law is an abomination. . . ." K. Davis, Administrative Law Treatise 114, 137 (Supp.1970), updating and republishing the author's article, The Information Act: A Preliminary Analysis, 34 Univ. of Chi.L.Rev. 761 (1967).

4. 5 U.S.C.A. § 552(b) provides:

> (b) This section does not apply to matters that are—
>
> .     .     .     .     .
>
> (2) related solely to the internal personnel rules and practices of an agency;
>
> .     .     .     .     .
>
> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
>
> .     .     .     .     .

ernment investigators or examiners would all be exempt from disclosure.

. . .

H.R.Rep.No.1497, 89th Cong., 2d Sess. 10, U.S.Code Cong. & Admin.News 1966, p. 2427 (1966).

Professor Davis, in an article tracing the legislative history of the Act and examining the conflict between the two reports, concluded that the language of the Senate Report most accurately reflects the wording of the statute. Moreover, he observed that the greater weight should be given to the report of the house which acted first, since otherwise that house would be deprived of any voice in the final meaning of the enactment.[5] We find his analysis persuasive. Though the courts addressing the question have not reached uniform results, the better reasoned decisions hold that the Senate Report more accurately interprets the language of the statute. *See* Hawkes v. Internal Revenue Service, *supra*; Benson v. General Services Administration, 289 F.Supp. 590 (W.D.Wash.1968), aff'd on other grounds, 415 F.2d 878 (9th Cir. 1969) (where the government apparently did not argue this issue on appeal); Consumers Union of United States v. Veterans Administration, 301 F.Supp. 796 (S.D.N.Y.1969), appeal dismissed as moot, 436 F.2d 1363 (2d Cir. 1971); Long v. Internal Revenue Service, 349 F.Supp. 871 (W.D.Wash.1972). *But see* Polymers, Inc. v. NLRB, 414 F.2d 999 (2d Cir. 1969), cert. denied, 396 U.S. 1010, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970); *cf.* City of Concord v. Ambrose, 333 F.Supp. 958 (N.D.Cal.1971); Cuneo v. Laird, 338 F.Supp. 504 (D.D.C.1972), appeal docketed, No. 72–1328, D.C.Cir., April 11, 1972.

■■ We conclude that this statutory exclusion must not be read so broadly as to exempt the manual sought here. Although this manual does include some amount of material which falls within the description of personnel rules and practices, the manual is not solely or even primarily composed of that type of material. It would be a strained, indeed ridiculous application of the statute which would insulate from disclosure the majority of the manual which contains the substance of what the statute commands be revealed because minor, relatively immaterial parts of the manual, such as the introduction and welcome to the course, could be classified as internal personnel rules and practices.

### The "Memorandum" Exception

■ We also find without merit the government's contention that the material involved falls within the exception for inter-agency or intra-agency memorandums. Whatever may be the scope of this exception, with its cryptic limiting phrase "which would not be available by law to a party other than an agency in litigation" (*see* Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)) we think it would be a perversion of the Act to classify the materials sought in this case as within this provision which is designed to encourage the free exchange of ideas among government policy-makers. It was not defined as an exception to compelled disclosure in order to authorize an agency to throw a protective blanket over any type of information it might choose by the expedient of casting it in the form of an internal memorandum. Bristol Myers Co. v. F. T. C., 424 F.2d 935 (D.C.Cir.), cert. denied, 400 U.S. 284, 91 S.Ct. 46, 27 L. Ed.2d 52 (1970). Substance not form determines its availability by the public.

That exemption [(b)(5)] was intended to encourage the free exchange of ideas during the process of deliberation and policy-making; accordingly, it has been held to protect internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes, but not purely factual or investigatory reports. Factual information may be protected only if it is inextricably intertwined with policy-making processes. . . .

5. Administrative Law Treatise, *supra* note 3, at 145, 174–75.

But courts must beware of "the inevitable temptations of a governmental litigant to give [this exemption] an expansive interpretation in relation to the particular records in issue."

Soucie v. David, 145 U.S.App.D.C. 144, 154–155, 448 F.2d 1067, 1077–1078 (1971) (footnotes omitted). *See also* General Services Administration v. Benson, 415 F.2d 878, 880–881 (9th Cir. 1969). The subject manual is an impersonal, mass-produced statement of established policy designed to be utilized as an educational and reference tool, not for policy-making or deliberative purposes. If this material be a "memorandum" then the term would cover virtually all government documents of any description or nature. Such an interpretation would be at war not only with the plain meaning of the word but also with the spirit and purpose of the Act. Whatever the ultimate scope of this "memorandum" exception may be, we are confident that these materials would remain without its reach. The district court correctly determined that the government failed to carry its burden to justify its action of withholding this material. The order appealed from is in all respects.

Affirmed.