**David I. CAPLAN, Plaintiff-Appellant,**

v.

**BUREAU OF ALCOHOL, TOBACCO & FIREARMS OF the DEPARTMENT OF the TREASURY OF the UNITED STATES of America, and all of its Agents, Defendants-Appellees.**

No. 240, Docket 78–6097.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1978.

Decided Oct. 31, 1978.

David I. Caplan, New York City, pro se, for plaintiff-appellant.

Carl T. Solberg, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for defendants-appellees.

Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

David I. Caplan, the *pro se* plaintiff-appellant, is an attorney who is in the process of writing a book on the constitutional implications of firearms control laws. On July 3, 1977 he initiated a request under the Freedom of Information Act, 5 U.S.C. § 552 (the Act), for the disclosure by the defendant-appellee, Bureau of Alcohol, Tobacco & Firearms (BATF), of its pamphlet "Raids and Searches." BATF denied the request but informed Caplan of his right to an administrative appeal. On that appeal BATF forwarded to Caplan a partial copy of the pamphlet, deleting certain material which in its opinion was within 5 U.S.C. § 552(b)(2),[1] which exempts from disclosure matters that are "related solely to the internal personnel rules and practices of an agency." Caplan thereupon filed a complaint on August 31, 1977 in the United States District Court for the Southern District of New York, seeking to enjoin BATF from withholding the deleted portions of the pamphlet and seeking production of the "whole of the said record . . . or such parts as the court deems proper." The agency submitted the unexpurgated pamphlet to the court for *in camera* inspection. 5 U.S.C. § 552(a)(4)(B). Both parties moved for summary judgment. On January 17, 1978 the Hon. Whitman Knapp, district judge, filed a memorandum and or-

der, ordering the further disclosure of some of the withheld material but not the whole of the pamphlet and signed an order to that effect on February 9, 1978.[2] This appeal by Caplan followed. BATF has not appealed that part of the order which directed the disclosure of certain additional material from the pamphlet and that information has been forwarded to Caplan.

I

Judge Knapp found that the withheld portions of the pamphlet in issue included descriptions of the equipment used by agents in making raids, the methods of gaining entry to buildings used by law breakers, factors relating to the timing of raids, and the techniques used by suspects to conceal contraband. 445 F.Supp. at 701. He further found that the release of such parts of the pamphlet would hinder investigations, enable violators to avoid detection and jeopardize the safety of Government agents. Id. Our own examination of the manual, which is a sealed exhibit in the record on appeal, confirms this view. Judge Knapp noted that the plaintiff had not cited, nor had the district court found (nor have we), any cases where the release of a law enforcement manual had been ordered where the effect of disclosure would be to impede law enforcement or endanger Government investigators. Id. Indeed, it seems clearly incongruous to believe that the Congress would provide for the release of material which would facilitate law evasion and undermine enforcement of the law. The difficulty we find, however, with the opinion below is that the district judge found that the manual in issue fell within none of the statutory exceptions to disclosure set forth in the Act.[3]

1. The entire Act is codified at 5 U.S.C. § 552. To avoid repetition, citations to the Act will in most instances be by subsection only.

2. Caplan's motion to alter the judgment or for reargument was denied on April 13, 1978 but Judge Knapp's prior memorandum was modified in some respects. The memorandum and order *as amended is reported at* 445 F.Supp. 699 (1978).

3. The exemption principally relied upon by the Government is subsection (b)(2), which precludes requiring disclosure of matters that are "related solely to the internal personnel rules and practices of an agency." The Government also contends that the withheld portions of the BATF manual are exempt under subsection (b)(7) as "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would

Rather, he based his decision to deny disclosure on the exercise of the court's general equitable discretion. Id. at 705–06. In so holding he relied upon Judge Feinberg's opinion in *Rose v. Department of Air Force*, 495 F.2d 261, 269 (2d Cir. 1974), aff'd, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). In that case we suggested that while an apparent split of authority exists as to the general equity power of a court to refuse disclosure under the Act, a truly exceptional case might require such an exercise of judicial discretion. Id. The district court found this to be such an "exceptional" case because disclosure of the withheld material could enable violators to escape detection and to endanger Government agents. Hence, the "public interest . . . warrant[ed] an exercise of discretion to decline enforcement with respect to such sections." 445 F.Supp. at 706.[4]

Plaintiff argues that the equitable discretion doctrine cannot apply to material which proposes unconstitutional methods of investigation, as, in light of a comment by the district judge discussed in Part III of this opinion, he suspects the manual does. We find it unnecessary to consider this because we hold that the disclosure here sought is within the (b)(2) exemption of the Act since the material not revealed related "solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

Indeed, on its face the language of subsection (b)(2) would seem to make clear the applicability of that provision to the portions of the manual here in question were it not for the differing interpretations of the (b)(2) exemption by the reports of the two Houses of Congress. The Senate Report gives as examples of (b)(2) material "rules as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like." S.Rep.No. 813, 89th Cong., 1st Sess. 8 (1965) (Senate Report). The House Report, on the other hand, lists as examples of such exempt internal reports: "[o]perating rules, guidelines, and manuals of procedure for Government investigators or examiners." H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Cong. & Admin. News 1966, p. 2427 (hereinafter House Report). The House Report further states that the (b)(2) exemption does *not* "cover all 'matters of internal management' such as employee relations and working conditions and routine administrative procedures which are withheld under the present law." Id.

As Judge Feinberg noted in *Rose, supra,* at 264, "*[i]n some instances,* the scope of the exemption may be open to considerable doubt since the Senate and House Reports diametrically clash." (Emphasis supplied). Thus, internal rules concerning Government employee parking facilities and lunch hours would be exempt from disclosure if the Senate Report is followed but not if the House Report interpretation is adopted. Conversely, under the House Report the coverage of (b)(2) would include the manual here in issue while the Senate Report would not extend (b)(2) to encompass such material. In *Rose* this court did not have to make any choice between the House and Senate Reports since the materials sought to be obtained (case summaries of Honor and Ethics Code adjudications kept in the files of the United States Air Force Academy) were held to be matters of general public interest, not solely matters of internal management within the meaning of the Senate Report. 495 F.2d at 265. Nor were they within the House exemption which, we noted, permits "disclosure of 'matters of inter-

---

. . . (E) disclose investigative techniques and procedures . . . ," or under subsection (a)(2)(C), which lists records that must be available for public inspection and copying, including "administrative staff manuals and instructions to staff that affect a member of the public," but not law enforcement manuals. S.Rep.No. 813, 89th Cong., 1st Sess. 2 (1965), U.S.Code Cong. & Admin. News 1966, p. 2418.

4. See generally *Halperin v. Department of State,* 184 U.S.App.D.C. 124, 131–32, 565 F.2d 699, 706–07 (1977); *Tax Analysts & Advocates v. IRS,* 164 U.S.App.D.C. 243, 505 F.2d 350 (1974); authorities cited in *Rose v. Department of the Air Force, supra,* at 269 n.23; K. Davis, Administrative Law of the Seventies § 3A.6 (Supp.1976).

nal management,' except where knowledge of administrative procedures might help outsiders to circumvent regulations or standards." Id. Release of the summaries, which constituted quasi-legal records, was held to pose "no such danger to the effective operation of the Codes at the Academy." Id.

While this court observed in *Rose* that the Senate Report was thought by many to comply more closely with the statutory language of the Act than the House Report, we also stated that this court had not taken a firm stand on the issue. Id. In the instant case the district court has taken such a stand, holding that the Senate Report is to be followed in interpreting the (b)(2) exemption and that consequently, the exemption is confined to materials which relate to "conditions of employment" such as lunch hours, sick leave, parking privileges and the like. 445 F.Supp. at 702. We disagree.

In affirming our decision in *Rose*, the Supreme Court expressed a general preference for the Senate Report as a guide to construction of the (b)(2) exemption. However, the Court was careful to qualify this preference: "at least *where the situation is not one where disclosure may risk circumvention of agency regulation*, Exemption 2 is not applicable to matters subject to such a genuine and significant public interest." 425 U.S. at 369, 96 S.Ct. at 1603. But the finding below, with which we agree, was that the instant case is one where disclosure may risk circumvention of agency regula-

tion. Thus, in the case at hand we are faced with circumstances in which we are free to give weight to the House Report. While scholars such as Caplan or the merely curious may have an interest in the investigative techniques and procedures employed by Government agents, it would appear obvious that those immediately and practically concerned with such matters would be individuals embarked upon clandestine and illicit operations, the detection of which would be frustrated if they were privy to the methods employed by the BATF to ferret them out. We believe, in sum, that the interpretation of (b)(2) by the Supreme Court in *Rose*, not only does not preclude but furnishes support for holding that this exemption prevents the forced disclosure of the information in the BATF manual which is here sought.[5] It would be anomalous indeed to attribute to Congress the intention to require agency revelation of internal law enforcement manuals. Such a step would increase the risk of physical harm to those engaged in law enforcement and significantly assist those engaged in criminal activity by acquainting them with the intimate details of the strategies employed in its detection. Every court faced with the issue has determined that information having the potential for either such result is not to be distributed under the Act.[6]

## II

Our determination that the (b)(2) exemption is applicable in this case and is not

[5] In view of our disposition we need not comment on whether the withheld material is also exempt from disclosure under the (b)(7) exemption.

[6] Some courts have come to this conclusion, as we do today, by interpretation of (b)(2). See *Ginsberg, Feldman & Bress v. Federal Energy Administration* (D.D.C. June 18, 1976) Civ. Action No. 76–27, aff'd, (D.D.C. Feb. 14, 1978), —— U.S.App.D.C. ——, —— F.2d ——, panel opinion vacated, reargued en banc (April 6, 1978) (FEA manual for auditors of oil refineries); *Tietze v. Richardson,* 342 F.Supp. 610 (S.D.Tex.1972) (Social Security claims processing guidelines); *Cuneo v. Laird,* 338 F.Supp. 504 (D.D.C.1972) ("playbook" parts of defense

contract audit manual), rev'd on other grounds sub nom. *Cuneo v. Schlesinger,* 157 U.S.App. D.C. 368, 484 F.2d 1086 (1973). Others have reached the same result by relying on § 552(a)(2)(C). See *Cox v. United States Department of Justice,* 576 F.2d 1302 (8th Cir. 1978) ("violator classification identifier" in Drug Enforcement Agency manual); *City of Concord v. Ambrose,* 333 F.Supp. 958 (N.D.Cal. 1971) (Bureau of Customs manual describing methods of effective surveillance of customs law violators). See also *Stokes v. Brennan,* 476 F.2d 699, 702 (5th Cir. 1973); *Hawkes v. Internal Revenue Service,* 467 F.2d 787, 795 (6th Cir. 1972).

foreclosed by the Senate Report is fortified by another section of the Act which is also discussed in that Report. Section (a) of the Act, the disclosure section requires, *inter alia*, that certain records and reports must be made available to the public for inspection and copying. Section (a)(2)(C) provides that among such records are "administrative staff manuals and instructions to staff that affect a member of the public . . . ." The Senate Report makes clear that the word "administrative" was added to the Bill for the following purpose:

> The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which pertain to administrative matters *rather than to law enforcement matters* protects the traditional confidential nature of instructions to Government personnel prosecuting violations of law in court, while permitting a public examination of the basis for administrative action.

Id. at 2.

An administrative manual which sets forth or clarifies an agency's substantive or procedural law should be made available since there is a legitimate public interest in having those affected guide their conduct in conformance with the agency's understanding. *Cuneo v. Schlesinger*, 157 U.S. App.D.C. 368, 372–73, 484 F.2d 1086, 1090–91 (1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). We agree with Professor Davis' observation that "secret law is an abomination." K. Davis, Administrative Law Treatise 137 (Supp.1970); see *Stokes v. Brennan, supra*, at 701–02 & n.3; *Hawkes v. Internal Revenue Service, supra*, at 795. On the other hand, revelation of a manual such as the one before us, which does not purport to set forth the bureau's interpretation of substantive or procedural law, but rather focuses on the techniques for apprehending those who engage in breaking the law, would not promote lawful behavior; it would only facilitate law evasion. This distinction is clearly the point of

the Senate Report on subsection (a)(2)(C). *Hawkes v. Internal Revenue Service, supra* at 794–95.

After the opinion of the district court was filed below, the Eighth Circuit in *Cox v. United States Department of Justice, supra*, held that a Drug Enforcement Agency manual comparable to that in question here should be denied disclosure under subsection (a)(2)(C). The position that (a)(2)(C) provides an additional exemption to those designated in section (b) has the support of Professor Davis, K. Davis, Administrative Law of the Seventies 56 (Supp.1976); see *City of Concord v. Ambrose, supra*. However, we need not resolve that question here. Certainly in construing the (b)(2) exemption the full Senate Report should be considered and we should not attribute an inconsistency to that Report which would preclude the disclosure of a law enforcement manual under subsection (a)(2)(C) and yet fail to provide for its exemption as an internal report under exemption (b)(2). Reading the language of the House and Senate Reports on subsections (b)(2) and (a)(2)(C) together we are persuaded that the (b)(2) exemption, as the Supreme Court suggested in *Rose*, includes internal material such as the withheld portions of the BATF manual where disclosure may risk circumvention of agency regulation.

### III

Judge Knapp indicated in a footnote of the district court opinion that some of the law enforcement techniques described in the BATF manual were of dubious legality under the Fourth Amendment. 445 F.Supp. at 706 n.11. Since the court had rested its refusal to order disclosure of the material on equitable grounds, Caplan urged in his motion for reargument and on this appeal that BATF was not entitled to protection because its hands were unclean. Whatever merit this argument may have had, it is no longer of moment since we have placed our decision not on the basis of general equity jurisdiction but rather on

the (b)(2) statutory exemption. Caplan surely has no standing to question the constitutionality of any of the regulations simply because he is planning to write a book on the subject. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37–38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

In the event that BATF agents engage in unconstitutional practices invading the Fourth Amendment rights of those allegedly pursuing criminal activities, there will be ample opportunity to determine the legality of the procedures actually employed in an adversary proceeding. Our jurisdiction is constitutionally limited to "cases and controversies" and there is none presented here which would permit a review in the abstract of the constitutionality of procedures described in the BATF manual.

Affirmed.