Dennis J. SLADEK, Plaintiff-Appellee,

v.

Peter BENSINGER, in his capacity as Administrator, Washington, D. C., and Drug Enforcement Administration, Defendants-Appellants.

No. 77–3247.

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1979.

Michael Kimmel, Civ. Div., Leonard Schaitman, Barbara A. Babcock, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendants-appellants.

Charles E. Hill, Diane B. Cohn, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

This is a Freedom of Information Act (FOIA) case, 5 U.S.C. § 552, brought against the Drug Enforcement Administration (DEA) seeking the release of portions of the DEA Agent's Manual concerning aspects of the DEA's handling of confidential

informants and search warrant procedures. The district court ordered disclosure of the portions of the manual requested by Sladek.[1] On appeal the DEA asserts three reasons for overruling the district court: (1) the manual is not subject to the mandatory disclosure provisions of the FOIA; (2) the contested portions of the manual are exempted from disclosure by the investigatory records exemption, § 552(b)(7); and (3) the manual is exempt under the internal personnel rules exemption, § 552(b)(2).[2]

## I. Administrative manuals and § 552(a)(2)(C)

The first step in analyzing an FOIA request is to determine whether the requested material is subject to the disclosure requirements of 5 U.S.C. § 552(a). There are two subsections possibly requiring disclosure. Subsection (a)(2)(C) requires an agency to make available for public inspection and copying "administrative staff manuals and instructions to staff that affect a member of the public." Subsection (a)(3) is a catch-all provision that requires an agency to make available upon request records not covered by § (a)(1) [designated records required to be published in the Federal Register] or by § (a)(2) [designated records required to be made available for public inspection and copying]:

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describe such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

The DEA contends that its manual is not covered by § (a)(2)(C) because it is a law enforcement manual. The distinction drawn in the legislative history between law enforcement materials and the "administrative" manuals and instructions referred to in § (a)(2)(C), has given rise to what has been called the "law enforcement exception." The Senate Report on the FOIA contains this explanation:

The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which pertain to administrative matters rather than to law enforcement matters protects the traditional confidential nature of instructions to government personnel prosecuting violations of law in court while permitting a public examination of the basis for administrative actions.

Sen.Rep.No.813, 89th Cong., 1st Sess. 2 (1965). Necessarily, the courts have laid down criteria for determining whether materials are "administrative" or "law enforcement." This court in *Stokes v. Brennan,* 476 F.2d 699, 701–02 (CA5, 1973), adopted the Sixth Circuit's approach in *Hawkes v. Internal Revenue Service,* 467 F.2d 787, 795 (CA6, 1972), for determining whether a government manual falls within the law enforcement exception to disclosure. As stated in *Hawkes* the law enforcement exception only bars "disclosure of information which, if known to the public, would *significantly impede* the enforcement process." 467 F.2d at 795 (emphasis in original). On the basis of that understanding of the limited nature of the law enforcement exception, the *Stokes* court ordered

---

1. The district court ordered the release of seven sections of the manual: § 6234.31 (handling statements made by informers); § 6612.46 (unreliable informants); § 6832.2 (screening "walk-in" informants); § 6651.1 (obtaining search warrants); § 6653.1 (planning the execution of a warrant); § 6653.2 (entry of the premises to be searched); § 6653.3B (search procedures). After the district court decision the government released to Sladek portions of § 6612.46 and all of §§ 6651.1 and 6653.3B.

2. In *Cox v. U. S. Department of Justice,* 576 F.2d 1302 (CA8, 1978), the Eighth Circuit considered whether the DEA manual which is the subject of this law suit, must be disclosed under the FOIA. The *Cox* court decided to remand the case to the DEA to determine whether the manual must be disclosed in light of its decision. Basically, the court concluded that if disclosure would impede law enforcement efforts the manual would not have to be disclosed.

production of the Occupational Safety and Health Administration (OSHA) manual and other materials for training compliance officers. The manual included "concise explanations of inspection procedures and detailed discussions of the standards to be enforced." 476 F.2d at 702. The court concluded that an employer's detailed analysis of the OSHA materials would not enable him to avoid compliance with safety and health standards.

Our *in camera* review of the contested portions of the DEA manual leads us to the same conclusion reached by the district court in this case: disclosure of the sections of the manual dealing with informants and search warrants would not obstruct the DEA's law enforcement efforts. The sections concerning informants, §§ 6234.31, 6612.46 and 6832.2, merely deal with DEA procedures for handling informants' statements, when they should be reduced to writing and their format, what to do with "walk-in" informants, and procedures for keeping track of unreliable informants. The DEA contends that publication of its procedures for handling informants is likely to make an already skittish breed even more hesitant to provide information. We see no reason why this should occur. On the contrary, publication of how informants are treated may reduce unnecessary mystery and make some persons more willing to disclose information concerning criminal activity.

There remain only two search warrant sections that the DEA has refused to release. The sections on obtaining warrants and search procedures have been made public. Disclosure of the sections dealing with planning prior to entry, § 6653.1 and gaining entry, § 6653.2, would not impede law enforcement efforts. The material contained in the planning prior to entry section concerns trivial details of an insignificant nature. The gaining entry section, on the other hand, in addition to stating several general procedures for securing the searched area, states generally applicable legal rules for gaining entry to the premises. We see no difference between this section and the inspection procedures ordered disclosed in *Stokes.*

The material requested by Sladek does not fall within the law enforcement exception to (a)(2)(C) and must be disclosed under that section unless it falls within one of the categories of materials that are exempt from disclosure under § 552(b).

Because we conclude that the sections here in question must be disclosed under (a)(2)(C), it is not necessary for us to address disclosure under (a)(3).[3]

## II. Exemption 2: internal personnel rules and practices

■ The DEA contends that its Agent's Manual falls within Exemption 2, which provides that matters that are "related solely to the internal personnel rules and practices of an agency" are not subject to the disclosure requirements of § 552(a). We conclude that only the section of the manual dealing with planning prior to entry falls within this exemption.

The meaning of Exemption 2 has been the subject of extensive litigation. The main source of confusion is the conflicting legislative history. The Senate Report interpreted Exemption 2 very narrowly:

> Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulations of lunch hour, statements of policy as to sick leave, and the like.

Sen.Rep.No.813, 89th Cong., 1st Sess. 8 (1965). The House Report on the other hand gave Exemption 2 a broader scope:

> Matters related solely to the internal personnel rules and practices of any agency: Operating rules, guidelines, and manuals of procedure for Government investigators or examiners would be exempt from

---

**3.** Relying on *Cox v. U. S. Department of Justice,* 576 F.2d 1302 (CA8, 1978), the DEA contends that the law enforcement exception to (a)(2)(C) impliedly carries over to (a)(3). The D.C. Circuit rejected this argument in *Jordan v. U. S. Department of Justice,* 192 U.S.App.D.C. 144, 591 F.2d 753 (D.C.Cir., 1978).

disclosure, but this exemption would not cover all "matters of internal management" such as employee relations and working condition and routine administrative procedures which are withheld under the present law.

H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2427. The DEA· urges that for purposes of this case the House Report properly reflects the types of materials Exemption 2 was intended to except from the FOIA disclosure requirements.

In *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the Supreme Court concluded that in most cases the Senate's version of Exemption 2 defines the scope to be given its coverage. Only "matter in which the public could not reasonably be expected to have an interest," is within the scope of Exemption 2. *Id.* at 369–70, 96 S.Ct. at 1603, 48 L.Ed.2d at 26 (footnote omitted). This court in *Stokes v. Brennan, supra* at 703, reached the same conclusion. *Accord, Jordan v. U. S. Department of Justice,* 192 U.S.App.D.C. 144, 154–162, 591 F.2d 753, 763–71 (D.C.Cir., 1978); *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 192, 523 F.2d 1136, 1141 (D.C.Cir., 1975);· *Hawkes v. Internal Revenue Service, supra* at 796–97. The *Rose* Court, however, left open the question whether the House Report would be followed in a case "where disclosure may risk circumvention of agency regulation." 425 U.S. at 369, 96 S.Ct. at 1603, 48 L.Ed.2d at 26. The Second Circuit

and D.C. Circuit recently split on this issue. The Second Circuit in *Caplan v. Bureau of Alcohol, Tobacco & Firearms,* 587 F.2d 544 (CA2, 1978), concluded that Exemption 2 covered the Bureau of Alcohol, Tobacco & Firearms (BATF) pamphlet "Raids and Searches" because disclosure of the pamphlet would risk circumvention of the agency regulation. The D.C. Circuit on the other hand concluded in *Jordan v. U. S. Department of Justice, supra* 192 U.S.App.D.C. at 162, 591 F.2d at 771, that even if disclosure may lead to circumvention of agency regulations, Exemption 2 is nevertheless limited to excepting documents in which the public could not possibly have any interest. Because we have concluded that disclosure of the sections of the DEA manual requested by Sladek would not impede law enforcement efforts there is no need for us to choose between the Second Circuit's and D.C. Circuit's interpretations of Exemption 2 when disclosure would risk circumvention of the law.[4] The Supreme Court made clear in *Rose* that Exemption 2 only covers matters in which the public has no interest where there is no risk that disclosure would impede law enforcement efforts.

The DEA argues that portions of § 6612.-46 are exempt under Exemption 2 because there is no genuine public interest in them. We disagree. They concern DEA procedures for keeping track of unreliable informers. This is not the type of trivial rule, such as allocation of parking facilities, that is covered by Exemption 2. We do think,

---

4. The decision in *Cox v. U. S. Department of Justice,* 195 U.S.App.D.C. 189, 601 F.2d 1 (D.C. Cir., 1979), may indicate a retreat from the position the D.C. Circuit adopted in *Jordan* that circumvention of agency rules is not a basis for broadening the scope of Exemption 2. 173 U.S.App.D.C. at 162, 591 F.2d at 771. In *Cox,* the D.C. Circuit in summarizing the types of materials covered by Exemption 2 included "those portions of law enforcement manuals that prescribe the methods and strategy to be followed by law enforcement agents in the performance of their duties." 195 U.S.App.D.C. at 192, 601 F.2d at 4. The court, however, based its decision on the ground that the material requested dealt with "routine matters of merely internal interest." *Id.* at 192, 601 F.2d at 4 (footnote omitted). The district courts in the D.C. Circuit have been reluctant to follow the meaning of *Jordan.*

In both *Sturgeon v. Department of Treasury,* No. 77–1961 (D.D.C., January 30, 1979) (Secret Service operations manual), and *Cox v. U. S. Department of Justice,* No. 78–1944 (D.D.C., May 8, 1979) (DEA training manuals), the courts concluded that if disclosure of the requested material would risk circumvention of the law, it was covered by Exemption 2. See the following language from *Jordan* :

> as our analysis of the statutory language of Exemption 2 and its legislative history demonstrates, Exemption 2 was not designed to protect documents whose disclosure might risk circumvention of agency regulation, whatever would be the merits of such a provision. Exemption 2 is much more limited, as we have described.

591 F.2d at 771.

however, that § 6653.1, planning prior to entry, is so trivial that there could be no public interest in its contents. *See Cox v. Department of Justice,* 195 U.S.App.D.C. 189, 192–194, 601 F.2d 1, 4–6 (D.C.Cir., 1979). That section is, therefore, exempted from FOIA's disclosure requirements.

III.   Investigatory files: Exemption 7

█ Exemption 7 covers "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (E) disclose investigative techniques and procedures." § 552(b)(7). The language of Exemption 7 makes clear that only records compiled in the course of an investigation directed at specific persons are exempt and then only if disclosure would reveal investigative techniques and procedures.[5] The DEA manual was not compiled in the course of a specific investigation. Exemption 7 is inapplicable. *Cox v. U. S. Department of Justice, supra* at 1310; *see Cox v. Levi,* 592 F.2d 460, 462 (CA8, 1979).

The portions of the DEA manual requested by Sladek are subject to disclosure under (a)(2)(C) and with the exception of the section dealing with planning prior to entry, § 6653.1, none of the exemptions covers the requested material.

The decision of the district court is AFFIRMED in part and REVERSED in part.

JAMES C. HILL, Circuit Judge, concurring in part and dissenting in part:

With all due respect for my brothers in the majority, I cannot concur in their disposition of this appeal. Recognizing that this case presents close questions of law, I would nonetheless disagree with certain of the majority's legal conclusions. Further, I must disagree with certain of their applications of the law (as they find it or as I do) to the facts of this case. I concur, however,

with the *results* that the majority reached in regard to sections 6324.31, 6612.46, and 6653.1 of the DEA Agent's Manual. I dissent from the result reached on section 6653.2 and would remand the issue of 6832.2 to the district court.

The majority holds that various sections of the manual must be disclosed under the Freedom of Information Act and bases this conclusion primarily on its interpretation of section (a)(2)(C) of that statute. The majority notes that in *Stokes v. Brennan,* 476 F.2d 699 (5th Cir. 1973), this court stated that information contained in law enforcement manuals is not available to the public under section (a)(2)(C) if its disclosure to the public "would *significantly impede* the enforcement process" of the agency. *Id.* at 701 (emphasis in original).

The Freedom of Information Act sets forth three methods by which agencies must make various types of information available to the public. Paragraph (a)(1) requires that agencies publish certain information in the Federal Register; (a)(2) that they index certain material and make it available for public inspection and copying; and (a)(3) that they make all other records available to any person upon proper request. Paragraph (b) enumerates nine categories of records exempt from disclosure and paragraph (c) emphasizes that agencies may not withhold information from or limit the availability of records to the public "except as specifically stated in this section."

As I understand the case before us, appellant made a request for particular records, portions of the DEA Agent's Manual, yet the majority relies on the section requiring the agency to index and make "administrative" manuals (but not portions of law enforcement manuals whose disclosure would significantly impede enforcement) available for inspection and copying. It is true that

---

**5.** Exemption 7 does not "include routine techniques and procedures already well known to the public, such as ballistics tests, fingerprinting and other scientific tests or commonly known techniques." Conf.Rep.No.93–1200, 93d Cong., 2d Sess. (1974), U.S.Code Cong. &

Admin.News 1974, pp. 6267, 6291. We are inclined to believe that the remaining disputed section dealing with searches—gaining entry—falls within the category of well-known investigative techniques. The sections on informants are probably not as widely known.

several courts [1] and a leading commentator [2] have stated that the legislative history of paragraph (a)(2) (indicating that certain portions of law enforcement manuals need not be indexed and made available for inspection and copying) be read into exemption two in paragraph (b) for matters that are "related solely to the internal personnel rules and practices of an agency." The exemptions apply to records covered by all three methods, so if this view is correct, then the apparent distinction between paragraphs (a)(2) and (a)(3) would be obliterated in one respect; portions of law enforcement manuals whose disclosure would significantly impede enforcement would not be available by the method specified in (a)(3) exactly because such portions are not available by the method prescribed in (a)(2). The Court of Appeals for the District of Columbia recently held that this position is untenable in view of the statute's structure, and that such a conclusion would require finding that Congress made an error in drafting.[3]

The majority places great reliance on this court's discussion in *Stokes* of law enforcement manuals and the disclosure method prescribed in paragraph (a)(2). The court in *Stokes*, however, affirmed the district court's order that the Secretary of Labor produce previously withheld portions of an OSHA manual "for inspection and copying," 476 F.2d 699, 700. In *Stokes* the court apparently held that the agency had failed to comply with paragraph (a)(2) of the statute. In such a setting it is proper to decide whether disclosure would significantly impede enforcement.[4] The appellant in the present case urges us to base a finding of nondisclosability on particular exemptions in paragraph (b) rather than on paragraph (a)(2)(C), and states that the particular exemption would provide a sounder basis for such a holding.

Relying primarily on the structure and language of the statute, finding the excellent analysis of this issue by the Circuit Court for the District of Columbia persuasive, and noting that this court in *Stokes* apparently was faced with a different fact situation than we now are, I would not resolve this case on the basis of paragraph (a)(2) but, instead, would rely on exemption (b)(2) which states that the Freedom of Information Act does not apply to matters that are "related solely to the internal personnel rules and practices of an agency."

The majority notes that in 1973 this court in *Stokes* stated that the Senate Report (which interprets the language of (b)(2) as referring to, for example, rules and regulations concerning parking facilities, lunch hours, and sick leave) more accurately interprets the statutory language than does the House Report (which states that manuals of procedure for government investigators would be exempt under this provision). Three years later, the Supreme Court in *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592 at 1600–1601, 48 L.Ed.2d 11 (1976), also noted the difference between the House and Senate Reports on exemption two. After stating that almost all courts to consider the difference concluded that the Senate Report more accurately reflects Congress' purpose, the Court went on to note:

> Those cases relying on the House, rather than the Senate, interpretation of Exemption 2, and permitting agency withholding of matters of some public interest, have done so only where necessary to prevent the circumvention of agency regulations that might result from disclosure to the subjects of regulation of the procedural manuals and guidelines used by the agency in discharging its regulatory func-

---

1. *Cox v. United States Dep't of Justice*, 576 F.2d 1302, 1306–07 (8th Cir. 1978); *City of Concord v. Ambrose*, 333 F.Supp. 958, 960 (N.D.Cal.1971).

2. K. Davis, *Administrative Law Treatise* 56 (Supp.1976).

3. *Jordan v. United States Dep't of Justice*, 192 U.S.App.D.C. 144, 151–153, 591 F.2d 753, 760–63 (D.C.Cir.1978).

4. The court in *Stokes* did go on to discuss exemption two. *Id.* at 702–03. The exemptions, however, apply to all three methods of disclosure. The Court in *Stokes* made no reference to (a)(3).

tion. See, e. g., *Tietze v. Richardson*, 342 F.Supp. 610 (SD Tex.1972); *Cuneo v. Laird*, 338 F.Supp. 504 (DC 1972), *rev'd on other grounds sub nom. Cuneo v. Schlesinger*, 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973); *City of Concord v. Ambrose*, 333 F.Supp. 958 (ND Cal.1971) (dictum). Moreover, the legislative history indicates that this was the primary concern of the committee drafting the House Report. *See* Hearings on H.R. 5012 before a Subcommittee of the House Committee on Government Operations, 89th Cong., 1st Sess., 29–30 (1965), cited in H.R.Rep.No. 1497, p. 10 n.14. We need not consider in this case the applicability of Exemption 2 in such circumstances, however, because, as the Court of Appeals recognizes, this is not a case "where knowledge of administrative procedures might help outsiders to circumvent regulations or standards. Release of the [sanitized] summaries, which constitute quasi-legal records, poses no such danger to the effective operation of the Codes at the Academy." 495 F.2d at 265 (footnote omitted).

*Id.* at 363–64, 96 S.Ct. at 1600–01. The Court added that the House Report should not itself be interpreted so broadly as to exempt all manuals, in part "because we think the primary focus of the House Report was on exemption of disclosures that might enable the regulated to circumvent agency regulation . . . ." *Id.* at 366–67, 96 S.Ct. at 1602. The Court in summarizing stated: "[W]e think that, at least where the situation is not one where disclosure may risk circumvention of agency regulation,

Exemption 2 is not applicable to matters subject to such a genuine and significant public interest." *Id.* at 369, 96 S.Ct. at 1603.

Other courts interpreting either (a)(2) or (b)(2) have stated that they would not order disclosure of materials which, if publicly available, would enable those regulated by an agency to circumvent its regulations.[5] The basis for nondisclosure is even stronger in connection with criminal activity which is not a regulated but a forbidden enterprise and several courts have so stated.[6]

The majority in the present case stated that it need not rule on the issue on which the Courts of Appeals for the Second Circuit and the District of Columbia have split, *i. e.*, whether to follow the House Report in a case where disclosure may risk circumvention of regulation, because the majority has concluded that disclosure of sections of the DEA manual would not impede enforcement efforts. (The majority found that disclosure here would not even "impede" and stated that paragraph (a)(2)(C) exempts disclosure only if such would not "significantly impede" enforcement.) In my view the two standards—"significantly impede" enforcement and "risk circumvention" of regulation—while similar, are not identical. One requires a *significant* impeding; the other only a *risk* of circumvention. Also, enforcement may be impeded in ways other than by a risk of circumvention.[7]

For the reasons that follow, I would find that materials whose disclosure would risk circumvention of narcotics laws fall within exemption two.

5. *See e. g., Stokes v. Brennan*, 476 F.2d 699, 701 (5th Cir. 1973); *Hawkes v. Internal Revenue Service*, 467 F.2d 787, 794–95 (6th Cir. 1972).

6. *See e. g., Cox v. United States Dep't of Justice*, 576 F.2d 1302, 1309 (8th Cir. 1978) (noting that the DEA manual relates entirely to illegal drug transactions and therefore probably contains little material that would encourage compliance); *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 545, 547 (2d Cir. 1978); *City of Concord v. Ambrose*, 333 F.Supp. 958, 959 (N.D.Cal.1971).

7. It is true that in *Hawkes*, the Court of Appeals for the Sixth Circuit, after setting out the "significantly impede" test for law enforcement

materials under section (a)(2), stated that "[e]nforcement is adversely affected *only* when information is made available which allows persons simultaneously to violate the law and to avoid detection." 467 F.2d 787, 795. This statement, however, seems to set forth a necessary but not a sufficient condition for finding that disclosure would "significantly impede" enforcement. This court in *Stokes* found that disclosure of portions of an OSHA manual would likely lead to more compliance not less and thus did not have to comment on the relationship between circumvention and significant impeding, 476 F.2d 699, 702.

As noted above, this court in *Stokes* first ruled, at least apparently, on what was really an (a)(2) issue. In that regard, the court found that disclosure of the withheld parts of the OSHA manual would not enable employers to ignore certain regulations but, rather, that disclosure was likely to lead to more compliance, 476 F.2d 699, 702. It is true that the Court in *Stokes* chose the Senate Report's interpretation of exemption two but its opinion preceded that of the Supreme Court in *Rose* where the Court in dicta indicated a narrower view of the House Report (i. e., not all manuals would be exempt, only those whose release would risk circumvention). Also, since the court in *Stokes* had found that release of the OSHA manual would likely increase compliance, arguably it had no need to discuss risk of circumvention again. Clearly, release of information concerning law enforcement procedures would not likely reform those bent upon crime into law-abiding citizens. It is not naive to suppose that those who operate commercial enterprises wish to comply with the law and will be encouraged to do so by disclosure of agency interpretations of the law and the steps which may be taken to enforce it. It would constitute naivety unbecoming of judges to suppose that those bent upon intentional criminal enterprises yearn to know how they might become more law-abiding.

Other courts have indicated that exemption two applies when disclosure would create a risk of circumvention of law.[8] Congress' concern expressed in (a)(2) and in exemption (b)(7) [9] provides further evidence that it intended to exempt information whose disclosure would assist those engaged in criminal activity. In holding that portions of a pamphlet published by the Bureau of Alcohol, Tobacco and Firearms pertaining to raids and searches were covered by exemption two, the Court of Appeals for the Second Circuit stated:

> While scholars . . . or the merely curious may have an interest in the investigative techniques and procedures employed by Government agents, it would appear obvious that those immediately and practically concerned with such mat-

---

**8.** *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 547 (2d Cir. 1978); *Cox v. United States Dept. of Justice*, No. 78–1944, slip op. at 3–5 (D.D.C., filed May 8, 1979); *Sturgeon v. Department of Treasury*, No. 77–1961, slip op. at 4–5 (D.D.C., filed Jan. 30, 1979). The two District of Columbia district court opinions note that *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C.Cir.1978), involved past violation prosecutorial discretion. The court in *Cox* held that the public had no *legitimate* interest in disclosure of withheld portions of the DEA manual (28 documents) and thus that these portions were within exemption two. Slip op. at 5.

**9.** The court in *Hawkes v. Internal Revenue Service*, 467 F.2d 787 (6th Cir. 1972), noted that the Senate inserted the word "administrative" before "staff manuals" in the text of (a)(2)(C) (which requires agencies to index and make administrative staff manuals available for public inspection and copying) specifically to exempt confidential law enforcement matters, citing the report of the Senate Committee on the Judiciary:

> The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which pertain to the administrative matters protects the confidential nature of instructions to personnel prosecuting violations of law in court,

while permitting a public examination of the basis for administrative actions.
S.Rep.No.813, 89th Cong., 1st Sess. 2 (1965).
Although exemption (b)(7) does not apply to the DEA manual because it is not an *investigatory* record, the text of that exemption, particularly subsection (E), further indicates Congress' desire to protect the confidentiality of such materials.
This section [Freedom of Information Act] does not apply to matters that are—

> .   .   .   .   .
>
> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

5 U.S.C.A. § 552(b)(7).

ters would be individuals embarked upon clandestine and illicit operations, the detection of which would be frustrated if they were privy to the methods employed by the BATF to ferret them out. We believe, in sum, that the interpretation of (b)(2) by the Supreme Court in *Rose*, not only does not preclude but furnishes support for holding that this exemption prevents the forced disclosure of the information in the BATF manual which is here sought. It would be anomalous indeed to attribute to Congress the intention to require agency revelation of internal law enforcement manuals. Such a step would increase the risk of physical harm to those engaged in law enforcement and significantly assist those engaged in criminal activity by acquainting them with the intimate details of the strategies employed in its detection. Every court faced with the issue has determined that information having the potential for either such result is not to be distributed under the Act. (footnotes omitted).

*Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 547 (2d Cir. 1978).

Mindful that "the Act precludes consideration of the interests of the party seeking relief,[10] I would note that material in the DEA Agent's Manual is likely to be the sort whose release would risk circumvention of criminal laws.

I agree with the majority that exemption seven does not apply to the withheld sections of the DEA manual.

The issue then becomes which, if any, of the disputed portions of the manual are exempted from disclosure?

The majority holds that Section 6653.1 dealing with planning prior to entry falls within exemption two because it is so trivial. I agree that exemption two encompasses certain trivial material as well as, in my view, material of a more dangerous sort. I discuss application of this standard to Section 6653.1 below.

In analyzing the sections of the manual that the DEA has withheld, I rely both on appellant's affidavits and on my *in camera* inspection of the manual. We should accept the credibility of the affidavits so long as we have no reason to question the good faith of the agency.[11] Paragraph (a)(4)(B) states that the district court "shall determine the matter [whether to enjoin withholding] de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." The Court of Appeals for the Eighth Circuit in *Cox v. United States Department of Justice*, 576 F.2d 1302 (1978), expressed concern for relying too heavily on *in camera* inspection, found DEA affidavits general, conclusory, and of little assistance, remanded the case to the district court (because the district court and the Department of Justice had relied on incorrect legal theories) and stated that the agency "must articulate its reasoning with specificity, to the degree that it can do so without revealing, in the affidavit itself, the content of the material in question." *Id.* at 1311.

**10.** *Cox v. United States Department of Justice*, 576 F.2d 1302, 1305 n.5 (8th Cir. 1978); *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (D.C.Cir.1971) (noting that the subsection (a)(3) of the act directs disclosure to "any person").

Thus the fact that in the three reported cases where individuals have sought disclosure of the DEA manual—this case; *Cox v. United States Department of Justice*, 576 F.2d 1302, 1305 n.5 (8th Cir. 1978); *Cox v. United States Department of Justice*, No. 78–1944 (D.D.C. filed May 8, 1979)—each was a prisoner or former prisoner at the time of his request (the opinion of

the district court does not refer to Cox's status but he seems to be the same Cox as in the Eighth Circuit case) can have no bearing on our determination. If the material is disclosable to any person it is disclosable to the appellee here. It might be, however, that we could take judicial notice of the fact that it is prisoners who seek disclosure of this manual, not to decide whether to release it *to them*, but as a further indication that *the material* itself might be helpful to criminals.

**11.** *Cox v. United States Department of Justice*, 576 F.2d 1302, 1312 (8th Cir. 1978).

I do not read the statute as requiring a court to place primary reliance on affidavits or as requiring limited or only secondary reliance on *in camera* inspection. Agencies in their affidavits and courts in written opinions upholding withholding of materials are faced with a similar dilemma, they must state reasons for withholding without revealing the content of undisclosed materials.

I would rule on the remaining specific sections of the DEA manual as follows:

*Section 6324.31. Informant statements.* DEA argues that this section outlines the agency's procedures for utilizing informants, specifically by indicating when statements regarding drug law violations should be reduced to writing and by detailing the format of such statements. The agency states that informants are often cautious, paranoid, and hesitant about signing statements relating to their knowledge of or involvement in drug traffic. Disclosure would tend to create an initial barrier and cause some potential informants not to volunteer information, thus causing enforcement to suffer.

Based on my *in camera* inspection of this section, its release might indeed significantly impede enforcement by slowing the flow of information to the DEA. Thus, if I agreed with the majority's test I would, as they did not, rule this section not disclosable. In my view, however, the government has not sustained its burden of showing, through affidavits or proffer of the section for *in camera* inspection, that release of this section would create a risk of circumvention of the law. As I understand the statute, information may not be withheld simply because its disclosure might cause some reduction in an agency resource including a citizen's willingness to provide tips to the agency involved. Informants as informants are not violators of the laws that DEA is to enforce and a change in informant behavior caused by disclosure of this section would not constitute circumvention of drug laws.

*Section 6612.46. Unreliable and unsatisfactory persons.* The agency argues that the unreleased portions of this section "are

matters of internal bureaucracy as to which there is 'no genuine and significant public interest,'" Brief for Appellant at 18–19, quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 369, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), and that they thus fall within exemption two. In its discussion of exemption two, the Court in *Rose* noted that the material involved there was not within that exemption because it was not matter with merely internal significance, it did not concern only routine matters, and its disclosure entailed no particular administrative burden. *Id.* The majority in the present case characterizes the material in this section as concerning DEA procedures for keeping track of unreliable informers and thus not the type of "trivial rule," such as one involving parking allocations, that exemption two covers.

Although in my view this is a close question, I would tend to agree with my brothers in the majority. The material does primarily detail clerical procedures but it deals with a situation that is, one would expect, not routine, and the existence of extensive procedures to insure that the agency not rely on unreliable and unsatisfactory persons would seem significant to the public, not just to the agency.

*Section 6653.1. Planning prior to entry.* The majority holds that exemption two covers this section, that the material is so trivial that the public could have no interest in it. DEA asserts that disclosure of both this section and section 6653.2 on gaining entry would enable violators to avoid detection, prevent seizure of evidence, or physically harm agents, that in fact both sections are "potential guides to violators." I would hold that exemption two covers this section for the reasons advanced by the agency, not by the majority. It is clear to me that violators of drug laws would find this information helpful in their criminal endeavors, specifically in avoiding searches, or successful searches, by agents with search warrants.

*Section 6653.2. Gaining entry.* As noted above, DEA objects to disclosure of this section on the same grounds that it objects

to disclosure of section 6653.1. According to the majority, this section states generally applicable legal rules for gaining entry and states several general procedures for securing the searched area and is thus no different from the OSHA inspection procedures ordered disclosed in *Stokes*.

The Court in *Stokes*, however, specifically found that the undisclosed portions of the OSHA manual focused on educating officers to OSHA standards as a whole, therefore

> [n]o matter how thorough an examination and analysis an employer may make of the manual and course material, he could not use the knowledge gained to insulate himself from the statutory penalties by complying with selected rules while ignoring even the least substantial part of the thrust of the standards as a whole.

476 F.2d at 702.

The Court in *Stokes* also found that

> The general areas of instruction detailed in the manual have already been made public by disclosure of the course outline. An examination of the course material dealing with each of these broad areas reveals that, while certain of the obviously more important guidelines are emphasized, the course focuses on educating new officers as to the scheme of the standards as a whole.

*Id.*

Subsection A of 6653.2 of the DEA Manual refers to proper agent attire in certain circumstances and Subsection B describes the method of securing the searched premises. In my view release of these sections would aid law violators. Subsection C instructs agents with search warrants on how and when they may use force to enter premises to be searched. As I read this section and the constitutional and federal statutory limits on executing search warrants by use of force, the section does not appear to constitute the agency's interpretation of the law so as to mandate disclosure.[12] Instead, it appears that the DEA in prudence has here set out procedures for executing search warrants that are somewhat more rigorous or specific than those required by law, probably to ensure that evidence so obtained would be in no jeopardy at all at trial. It would be particularly helpful to the criminal to know he could count upon law enforcement officers being more scrupulous in avoiding the use of force than his research of applicable case law might have led him to believe. This section does not contain "secret law" but, rather, information that a drug law violator could use to destroy evidence before agents enter his premises with a warrant. It should not, therefore, be disclosed.

*Section 6832.2. Informants.* DEA argues that this section outlines procedures for screening "walk in" informants to determine the nature and validity of their information. The agency states that release of this section could allow subversion of its operations in the form of misinformation or attempts to misdirect DEA's efforts. If true, this would constitute both significant impeding of enforcement (the majority's standard) and risk of circumvention (the proper standard in my view) by those who would misinform and misdirect the agency. The majority treats this section along with the other two sections concerning informants, 6234.31 and 6612.46, and does not specifically address the agency's argument concerning subversion by misinformation and misdirection channelled through walk-in informants. As I read the

---

12. [I]nformation clarifying substantive or procedural law must be disclosed. Professor Davis has made the following criticism of such 'secret law':

> I firmly believe that staff manuals or instructions in the nature of substantive or procedural law should be available. For instance, 'guidelines for the staff in auditing' of tax returns ought to be open to the taxpayer to the extent that they tell the auditor the position of the Internal Revenue Service on any question of tax law. . . . [S]ecret law is an abomination. [K. Davis, *Administrative Law Treatise* 137 (Supp.1970).]

*Cox v. United States Department of Justice*, 576 F.2d 1302, 1309 (8th Cir. 1978). *See also Stokes v. Brennan*, 476 F.2d 699, 701–02 (5th Cir. 1973); *Hawkes v. Internal Revenue Service*, 467 F.2d 787, 795 (6th Cir. 1972).

section, only one subsection deals with "walk in" informants. The district court stated that this section "contains some discussion of the decision to use informants for purposes of prosecuting individuals." Order, September 2, 1977, at 3. Because this court, the agency, and the district court do not clearly appear to be discussing the same section, because they do not refer to the section in its entirety as I read it, and because I would propose a different legal test from that of the majority, I would remand to the district court on this one section of the manual.